HOBSON, Justice.
This matter arises upon petition for certiorari directed to an order of the Florida Railroad and Public Utilities Commission.
Tamiami Trail Tours, Inc. (hereinafter (“Tamiami”), is a certificated common carrier of passengers operating under the jurisdiction of the respondent commission, pursuant to Chapter 323, Florida Statutes, 1957, F.S.A. Among other places, it is authorized to serve between Miami and South Bay over U. S. Highway No. 27, between Miami and South Bay, via Plollywood and Fort Lauderdale over U. S. Highway No. 1, State Highway No. 84 and U. S. Highway No. 27, and between Fort Myers, South Bay and West Palm Beach over State Highway No. 80.
In 1953 the Legislature of Florida enacted a statute known as the Turnpike Act [Chapter 28128, Laws of Florida, Acts of 1953, F.S. § 340.01 et seq., F.S.A.], which we considered in State v. Florida State Turnpike Authority, Fla., 80 So.2d 337. Pursuant to this statute, the Sunshine State Parkway was constructed. Section 25 of the Turnpike Act, being § 340.25, Florida Statutes, reads as follows:
“All motor common carriers and contract carriers that hold certificates of public convenience and necessity authorizing them to operate over the public roads of this state that will parallel a turnpike project or a section thereof on the date that such project is opened to the public for use, are hereby granted the right to operate their vehicles upon and over said turnpike project or such section thereof which parallels such public roads under such certificates upon compliance with the payment of the required tolls; provided, that such carriers shall comply with the provisions of this chapter and any rule and regulation of the authority as to the use of such projects, anything in said certificates to the contrary notwithstanding. Laws 1953, c. 28128, § 25.”
The current litigation commenced when Tamiami applied to the respondent commission for an extension of its certificate of public convenience and necessity which would authorize it to operate a common carrier service “between Miami, Florida, and the intersection of the Sunshine State Parkway and State Highway 80 over said Sunshine State Parkway”. The application was made pursuant to F.S. § 340.25, F.S.A., quoted above, and Tamiami contended in part that “tha't portion of the Sunshine State Parkway sought to be served by the applicant parallels the authorized routes of the applicant in part and transverses the area served by the applicant; * * * ”
The commission, after due notice, held a public hearing. Petitioner herein, The Greyhound Corporation, Southeastern Greyhound Lines Division (hereinafter “Greyhound”) protested that part of Tami-ami’s application which sought authority to operate over the Sunshine State Parkway between its intersection with State Roads 84 and 80. Greyhound did not protest so much of the application as involved that part of the Sunshine State Parkway between Miami and Fort Lauderdale, conceding that such section of the Parkway parallelled Tamiami’s certificated route. Greyhound contended below, and still contends, that the portion of the Parkway between Fort Lauderdale and the intersec *585 tion with State Road 80 is not “parallel” with Route 27. The commission, however, found that these two roads were parallel within the meaning of § 340.25 and granted Tamiami’s application, stating in part:
“The Commission finds that the word ‘parallel’ as set out in the above quoted Section should not be used in its mathematical sense as being in all parts equally distant, but should be construed in its secondary or popular sense to mean conforming, having the same direction or tendency, like or similar.”
Greyhound contends that the order entered by the commission, purportedly under authority of § 340.25, represents a departure from the essential requirements of the law. We agree, for it is clear to us that the radical result achieved herein was not intended by the legislature.
The first thing to be noted in connection with § 340.25 is that it is plainly self-executing. Thus it was contemplated by the legislature that the act itself would provide authority for a certificated carrier to use a turnpike project under the stated conditions. We can find no other meaning in the words “All * * * carriers * * are hereby granted the right to operate their vehicles upon and over said turnpike project * * *» [Emphasis added]. No application is needed, provided the conditions are met, and the condition relevant here is that the carrier must be certificated to operate over a public road “that will parallel a turnpike project or a section thereof * *
 We agree with the Commission, and Greyhound concedes, that “parallel” as used in the act does not require mathematical exactness, for such a construction would lead to absurd results. Route 1, for example is substantially parallel with the Parkway from Miami to Fort Pierce, and this should be enough to bring the statute into play. But we cannot agree that Route 27, between its intersection with Route 84 and South Bay, trending generally slightly north of northwest, can in any sense be considered “parallel” with the Parkway, which' extends due north and south within the controverted area. And Tamiami’s present route from South Bay to West Palm Beach intersects the Parkway approximately at right angles. We think the statute will be pulled wholly out of shape if routes so divergent are described as “conforming, having the same direction or tendency, like or similar.”
While the statute is before us, a further observation worth making is that the statutory language contains no reference to the distance between the certificated route and the parallel parkway authorized to be travelled. Certainly the legislature could not have intended to authorize, for example, travel on an east coast parkway by a carrier certificated only for a west coast highway, even though the two roads were parallel. Accordingly, the legislature must have intended that a reasonable maximum distance would be required. Otherwise this self-executing statute might be used to alter the traffic and competitive situation drastically throughout the state, and the Railroad and Public Utilities Commission would, at the least, be hard pressed to prevent it, absent further legislation.
From the foregoing it is evident that the commission erred in even considering Tami-ami’s application, which was both submitted and approved under § 340.25. The statute itself, however, under the facts of this case, authorizes Tamiami to use that part of the Parkway between Miami and Fort Lauder-dale, so that the unchallenged portion of the commission’s order, while superfluous, is not affirmatively erroneous.
We do not mean to suggest, of course, that the commission cannot authorize Tam-iami, or any other applicant, to use any or all of the Parkway upon a showing of public convenience and necessity, pursuant to Chapter 323, Florida Statutes, F.S.A. But the present application and record fall far short of meeting the requirements of this chapter, and we do not understand it to be contended otherwise.
*586 Certiorari is granted and the challenged order is quashed.
TERRELL, C. J., and STURGIS and WIGGINTON, District Judges, concur.
THOMAS, J., dissents.