No. 43,693

Roy C. Terrill, and Melba K. Terrill, *Appellees*, v. City of Lawrence, *Appellant*.

(392 P. 2d 909)

Opinion filed June 6, 1964.

John W. Brand, Jr., of Lawrence, argued the cause, and *Charles D. Stough*, of Lawrence, was with him on the briefs for the appellant.

Fred N. Six, of Lawrence, argued the cause, and *Richard A. Barber* and *John A. Emerson*, both of Lawrence, were with him on the brief for the appellees.

The opinion of the court was delivered by

Fontron, J.: This is an action brought pursuant to the provisions of G. S. 1949, 60-3127, to determine the validity of Resolution No. 2326 passed by the governing body of Lawrence, Kansas, providing for the grading and paving of Emery Road from Ninth Street to West Hills Parkway. From a judgment declaring the resolution to be void, the defendant city has appealed. For convenience, the parties will be referred to in this opinion as plaintiffs and city.

The resolution for grading and paving Emery Road contained no provision for protest and was passed pursuant to those provisions of G. S. 1961 Supp., 12-6a06, which authorizes a governing body of a city such as Lawrence to make improvements regardless of protest under either of the following circumstances:

1. ". . . Whenever adjoining parallel streets have been improved, and the proceedings are to improve the intervening connecting street to the same extent as the streets to be connected, or

2. "when two portions of any street have been improved and an intervening portion not exceeding two blocks has not been improved, and the proceedings are to improve such intervening portion to the same extent as the improved portions, . . ."

The resolution recites that Emery Road meets both conditions, *i. e.*, that it is an intervening connecting street between Ninth Street and West Hills Parkway which are adjoining parallel streets paved at their intersections with Emery Road, and that two portions of Emery Road have been improved with concrete with the intervening portion between Ninth Street and West Hills Parkway being less than two blocks long and not improved. The plaintiffs, whose land abuts Emery Road, dispute the city's position as set forth in the resolution and they contend that Emery Road meets neither of the two statutory requirements which authorize the improvement of a street regardless of protest.

The issue thus presented is simply and clearly etched: Does Emery Road come within either of the two categories set by the statutes? If the street falls within either of the statutory classifications, the city has authority to improve it regardless of protest and the resolution is valid, but if the street comes within neither classification then the city has exceeded its authority and the resolution is void.

We first consider whether Emery Road connects adjoining parallel streets. The evidence shows that Emery Road is 1809 feet in length running in a south-southwest direction from Ninth Street to a point where it intersects with West Hills Parkway, on the bias. It is intersected by no intervening street. The area traversed is an unplatted tract with highly irregular boundaries. Ninth Street runs approximately due east and west, while West Hills Parkway at its commencement runs generally from south to north but after proceeding a few hundred feet north, it then curves or circles back around toward the south. It is this curving circular part of West Hills Parkway, about 300 feet in length, which the city contends is parallel with Ninth Street.

The trial court made no specific findings of fact as to whether or not Ninth Street and West Hills Parkway are parallel. However, the court did conclude, as a matter of law, that G. S. 1961 Supp., 12-6a06 was never intended to permit a city to improve, without

protest, a street such as the part of Emery Road which is involved here, and that Resolution No. 2326 should be declared void.

This court has not heretofore had occasion to define the term "parallel" or to consider its meaning as used in the statute encompassed by this lawsuit. In two cases (*Milling Co. v. Junction City*, 98 Kan. 253, 157 Pac. 1174, and *Bailey v. City of Wichita*, 108 Kan. 282, 194 Pac. 928) mention is made of parallel streets. Both cases involve the construction of statutes authorizing street improvements. In the Junction City case, the court says, ". . . These streets (Seventh and Eighth streets) run east and west parallel with each other . . ." (p. 254.) In *Bailey v. City of Wichita*, supra, it is said:

"The paving in question was upon two blocks of Lorraine avenue in the city of Wichita, a street extending north and south and crossed by Central avenue and by Third street, which are parallel to each other, running east and west, and which are not over two blocks apart. . . ." (pp. 282, 283.)

Upon examination it appears obvious that the streets involved in both cases were of the good, honest, forthright old-fashioned type, laid out according to the compass rather than by aesthetic whim. Neither case is of much help here.

The term "parallel" is defined in Webster's New International Dictionary, 2d Ed., as follows: "1. *Geom:* Lying evenly everywhere in the same direction but never meeting, however far extended; in all parts equally distant. 2. With like direction or tendency; running side by side."

Black's Law Dictionary defines the term in this fashion: "Extending in the same direction and in all parts equidistant; having the same direction or tendency."

The word "parallel" has not been entirely without benefit of judicial interpretation. In *Greyhound Corporation v. Boyd*, 104 So. 2d 583 (Fla. 1958), the court had for its consideration the meaning of the word as used in the Florida Turnpike Act. This act, in effect, granted to a carrier holding a certificate of convenience and necessity the right to operate over such sections of a turnpike as paralleled the carrier's existing routes. On page 585, the Florida court said:

"We agree with the Commission, and Greyhound concedes, that 'parallel' as used in the act does not require mathematical exactness, for such a construction would lead to absurd results. . . . But we cannot agree that Route 27, between its intersection with Route 84 and South Bay, *trending generally slightly north of northwest, can in any sense be considered 'parallel'*

with the Parkway [*turnpike*], *which extends due north and south within the controverted area.* And Tamiami's [the carrier's] present route from South Bay to West Palm Beach *intersects the Parkway approximately at right angles. We think the statute will be pulled wholly out of shape if routes so divergent are described as 'conforming, having the same direction or tendency, like or similar'.*" (Emphasis supplied.)

In *State v. Railway Companies,* 21 Mont. 221, 53 Pac. 623, the court in construing a statute providing, in substance, that no railroad corporation should consolidate its stock, property or franchise with any other railroad corporation owning or having under its control a parallel or competing line, said:

". . . We should say that by parallel railroads are meant railroads running in one general direction, traversing the same section of country, and running within a few miles of one another throughout their respective routes." (p. 235.)

In *Valente v. Atlantic City Electric Co.,* 28 N. J. Super. 476, 101 A. 2d 106, the court was called upon to construe the word "parallel" as it was used in a contract providing for the construction of an electric transmission line parallel to a gas pipe line. The New Jersey Superior court held that by "parallel" it was intended that the electric line should proceed in the same general direction as the pipe line although directional precision was not contemplated.

From the above and other decisions of like import, we may conclude that Euclidean exactness is not always to be inferred from use of the term "parallel." But it appears to us, however unschooled we may be in mathematical theory, that it would be a distorted and chimerical construction of language to declare that a straight line parallels part of a circle. If we are correct in our understanding of geometric principle, the arc of West Hills Parkway might be said to parallel the rectilinear length of Ninth Street at one point only—that single point to which it would be tangent, were ever the twain to meet.

In short, as we view the problem of parallelism, east and west Ninth Street would no more parallel the circular part of West Hills Parkway than would a street running from west of north to east of south, or a street running from south-southwest to north-northeast. It could hardly be contended by even the most sanguine of governing bodies that streets running in the latter directions could be said to parallel West Hills Parkway. We believe that the 300 foot stretch of West Hills Parkway, as it circles from a northerly direction back around and to a southerly course, is not a street

which parallels Ninth Street within the meaning and intendment of G. S. 1961 Supp., 12-6a06.

We turn now to the second point of inquiry: Is the portion of Emery Road sought to be paved an unimproved portion not exceeding two blocks and intervening between two improved portions of Emery Road?

This question has three parts: First, is the portion of Emery Road to be paved, unimproved?; second, does it exceed two blocks in length?; and third, does it intervene between two improved portions of the same street? The first point, i. e., is the section to be paved unimproved, will first be considered. As to this point, the trial court found:

"The portion of Emery Road which the City proposes to pave with concrete has been improved and maintained as a blacktop street at least since 1952 by the City."

The parties themselves, at the commencement of the trial, entered into the following stipulation which closely parallels the foregoing finding: "Emery Road has been improved and maintained by defendant since at least 1952."

The sole evidence on this phase of the case is found in the following testimony of George Williams, city engineer for the city of Lawrence:

"Q. Could you describe to the Court what the City has done with reference to improving Emery Road from the point you have indicated as an 'X' on Exhibit B, in a generally northerly direction to the junction of 9th Street?

"A. Well the City has periodically what we term sealed it, which is the application of a hot asphalt and gravel to the surface. They have graded the ditches. And I think that probably would be the extent.

"Q. In engineering parlance, is the portion of Emery Road which the City seeks to improve under this resolution in question is that considered to be an asphalt pavement?

"A. We deal in dimensions.

"Q. What would you call this pavement?

"A. It would be termed the low type of pavement.

"Q. And this has been done since this portion has been annexed to the City, and some years prior thereto?

"A. To the best of my knowledge, yes.

"Q. And this improvement you have just described, or this sealing treatment, has enhanced the condition of the road, has it?

"A. Yes, it makes it a dust free, or essentially a dust free road, that will have the capability of shedding water. In rainfalls the water runs off of it."

The statute itself, G. S. 1961 Supp., 12-6a06, does not define what is meant by "unimproved." However, other statutes relating

to public improvements shed light on the problem, and resort may be had to them for guidance. G. S. 1949, 12-601, PUBLIC IMPROVEMENTS, provides as follows:

"Whenever any street or avenue in any city shall be graded, regraded, *paved, repaved,* curbed, recurbed, guttered, reguttered, *macadamized, remacadamized, or otherwise improved,* the cost of *such improvement* shall be paid by and assessed to the property on each side of said street or avenue to the middle of the block." (Emphasis supplied.)

In G. S. 1949, 13-1011, which pertains to street and alley improvements in cities of the first class, the terms "pave" and "macadamize" are likewise used.

Turning to Webster's New International Dictionary, 2d Ed., we find the verb "macadamize" defined as follows: "To construct or finish (a road) according to the system invented by John Loudon McAdam (1756-1836), which consisted in compacting into a solid mass a layer of small broken stones on a convex well-drained earth roadbed; hence, to construct (any road) of broken stones, as on a bed of large stones, an old road, etc."

In the same work, "pave" is defined in this wise: "To lay or cover with stone, brick, asphalt, concrete, or other material, so as to make a firm, level, or convenient surface for travel; to floor with brick, stone, or other solid material; to cover as a street; as, to *pave* a street."

While we recognize that dictionaries do not purport to contain treatises on scientific or engineering subjects, nevertheless the definitions given in a responsible work are those which are generally and commonly accepted in everyday parlance. It is in such a sense that we must consider the words used in the statutes. In *State, ex rel., v. City of Kansas City,* 181 Kan. 870, 317 P. 2d 806, we said, ". . . Courts apply to words the definitions already given them by common usage. . . ." (p. 875.)

Under the evidence in the record, we are of the opinion that Emery Road between Ninth Street and West Hills Parkway may not be said to have been "unimproved" when Resolution No. 2326 was adopted. Its surface condition easily comes within the definitions above set out and conforms to what we conceive to be an improved roadway.

We are not unmindful that G. S. 1961 Supp., 12-6a06, authorizes the improvement of the unimproved intervening portion to the same extent as the improved portions of the street, but this, of

course, presupposes that the intervening portion was unimproved in the first instance.

It is urged by plaintiffs that the stretch of Emery Road involved in this case fails to measure up to the statutory requirements for reasons other than those already given. While their contentions in such regard present interesting questions, we are not required to determine them in view of the conclusions heretofore reached.

The judgment of the court below is affirmed.