JOHN R. TURNER ET AL., APPELLANTS, V. CITY OF
NORTH PLATTE, LINCOLN COUNTY, NEBRASKA, ET AL.,
APPELLEES.

279 N. W. 2d 868

Filed June 12, 1979.   No. 42283.

Murphy, Pederson & Piccolo and LeRoy Anderson, for appellants.

Maupin, Dent, Kay & Satterfield, for appellees.

Heard before BOSLAUGH, WHITE, and HASTINGS, JJ., and GRANT and SPRAGUE, District Judges.

WHITE, J.

This is an appeal from the dismissal by the District Court of plaintiffs' petition in error. The plaintiffs-appellants are the owners of property abutting West "E" Street in the defendant City of North Platte. The petition in error was filed after the city council, sitting as a board of equalization, levied special assessments for improvements to West "E" Street. The special assessments were levied pursuant to Nebraska's "gap and extend" law, sections 18-2001 to 18-2005, R. R. S. 1943. Briefly stated, it is the position of the plaintiffs that the "gap and extend" procedure may be used only in the case of previously unimproved street sections, that the street abutting their property was already paved, and that the special assessments are therefore void. Before addressing that argument, however, we are faced with the City's contention that the question is not properly raised. This contention is based both on the claim that this petition in error was not timely filed, and that there is no support in the record for the plaintiffs' claim that West "E" was already paved.

On March 7, 1972, the city council passed a resolution creating street improvements Nos. 125 through 132 and finding that "it is necessary and advisable that the City, under the authority granted by Sections 18-2001 to 18-2003 inclusive, Reissue Revised Statutes of Nebraska, 1943 as amended, cause the following unpaved streets * * * to be improved by grading, curbing, guttering and paving, together with necessary appurtenances, to-wit: * * * West 'E' Street from

the existing pavement at Buffalo Bill Avenue extending west to Bay Tree Avenue which improvement shall be known as Street Improvement No. 131."

No notice was given to the affected property owners at this time and none was required by the statute. In the months following, bids on the project were let, one was accepted, and some time prior to May 15, 1973, the work on West "E" Street was completed. On that date, the city council accepted the work and, pursuant to section 16-707, R. R. S. 1943, published notice that the council would sit as a board of equalization on June 5, 1973. Counsel for the plaintiffs appeared at the June 5, 1973, meeting and protested the proposed special assessments. Because of the protest, the council (quoting from the council's minutes) voted "to hold the matter of the assessment of Street Improvement District No. 131 and return it to the Public Works Committee for a report back at the next regular Council meeting." On August 7, 1973, the council voted that "Street Improvement District No. 131 be assessed as presented to the Council on June 5, 1973." This petition in error was filed on September 6, 1973.

Error proceedings must be commenced within 1 month from rendition of the judgment or final order. § 25-1931, R. R. S. 1943. The City concedes that this action was commenced within 1 month of the order by the city council, sitting as a board of equalization, levying the assessments complained of. It contends, however, that the board of equalization order is not the "judgment or final order" of which plaintiffs are actually complaining. The factual finding that West "E" Street could be improved under the "gap and extend" law was made, so the argument goes, when the council first ordered the improvements on March 7, 1972. The board of equalization did not have the authority to determine whether West "E" Street was a paved street or a continuation of a paved street. In other words, the alleged errors complained

of in this suit were made at that 1972 council meeting, and this petition was filed 1½ years too late. For two reasons, we think this argument cannot be sustained.

First, we are cited no cases and, after extensive search, find none which say the power of a board of equalization is so limited. Instead, we find the familiar rule that, in the execution of the power to tax, the taxing officers must be able to show legislative authority for every levy of taxes. See Loup County v. Rumbaugh, 151 Neb. 563, 38 N. W. 2d 745.

Second, we doubt that the "gap and extend" law would pass constitutional muster if the City's interpretation was followed. It is constitutionally required that there be notice to the property owners of a special assessment and an opportunity to contest not only its amount but also its validity before the assessment becomes a charge on the property. First Assembly of God Church v. City of Scottsbluff, *ante* p. 452, 279 N. W. 2d 126. On the other hand, "a notice of proceedings merely to determine whether the contemplated improvement should be made is not required by due process of law, provided a hearing upon the assessment itself is afforded." 14 McQuillin, Municipal Corporations, § 38.98, p. 247. Thus, no problem of constitutionality is encountered if, as plaintiffs argue, the petition in error may be filed after appearance before the board of equalization. For the reasons stated, we believe that plaintiffs' petition in error was timely filed to raise the issues presented by this appeal.

The other element of defendants' argument that the issues are not properly raised is their claim that the plaintiffs did not appear before the board of equalization and present evidence in support of their contentions. We find the record quite clear on the matter. The minutes of the June 5, 1973, meeting of the city council sitting as a board of equalization state: "Attorney Donald Pederson representing the

property owners in Street Improvement District No. 131 appeared regarding the matter.

"He stated he had written a letter regarding Street Improvement No. 131 dated November 27, 1972, to Mayor Phares. Said letter to be filed and made a part of Street Improvement No. 131 file."

The defendant City of North Platte argues that the letter referred to, which appears in the transcript, should not be considered. Without accepting that argument, we merely note the record is abundantly clear, without the letter, for the minutes go on to state: "He [Mr. Pederson, attorney for the property owners] stated the paving was allowed by resolution and the property owners were not notified until the paving was begun. They felt the action should be in keeping with a regular paving district. Also *the existing paving was torn up* and grade of the street lowered. He stated State law says once the street grade is established it cannot be changed without the consent of the landowner.

"He felt the people had not received special benefit and that the Council has failed to meet the conditions precedent, that the Council should not levy an assessment against this property involved and the paving district should be abandoned.

"City Engineer Jack Carlson stated the reason for *replacing the paving* was that the existing paving did not meet city standards, such as grade, not wide enough or safe enough. It was part of the city's street improvement program.

"Mayor Phares stated following Mr. Pederson's letter of November 17, 1972, the City Attorney reviewed the letter and the fiscal agent and bond counsel also reviewed the matter. The Engineering Committee, City Attorney, Mr. Pederson and City Engineer also met on the matter.

'Mr. Claude Faulkner of 420 Buffalo Bill spoke regarding the notification of property owners in

the district.'' (Emphasis supplied.)

The matter was held over and referred back to the committee on public works. At the meeting on August 7, 1973, the minutes reflect: ''Councilman Schell stated that it was the recommendation of the Public Works Committee to assess Street Improvement District No. 131 as presented to the Council on June 5, 1973. He stated they had been asked to confer with the bonding company with regard to this matter which was done. * * * Councilman Schell moved and Councilman Miller seconded the motion that Street Improvement District No. 131 be assessed as presented to the Council on June 5, 1973. All Councilmen present voted 'AYE.' ''

From the record, it is apparent that the property owners, by their attorney, testified that West ''E'' was paved prior to the improvements in question. That fact was not contested; in fact, we think the minutes fairly reflect that it was conceded. When the council voted to levy the assessments, it had no doubt that the section was already paved. It was acting instead on its legal opinion that this fact did not preclude special assessment under the ''gap and extend'' law. If it was incorrect in that opinion, the error of law may properly be corrected by petition in error.

We come, then, to the question which lies at the heart of this action. May a city of the first class, using the procedure provided in sections 18-2001 to 18-2003, R. R. S. 1943, repave or replace a street section already covered with a hard surface? The plaintiffs claim that it may not, that procedure being available only for a previously unpaved section. We agree.

The question of whether the term ''pave'' can include repaving has been answered both ways by courts of other jurisdictions. See, for example, Loewenbach v. Milwaukee, 139 Wis. 49, 119 N. W. 888, holding that ''paving'' was just as applicable to a

second or third construction as to the first, and Terrill v. City of Lawrence, 193 Kan. 229, 392 P. 2d 909, reaching a contrary view. The cases are not much help, in any event, because the decision is always made with a view to the purpose and language of the particular statute or covenant involved.

We turn then to an examination of Nebraska's street improvement statutes. A city of the first class desiring to specially assess abutting property for the cost of street improvements must generally rely on one of three procedures. Two of the methods involve the formal creation of street improvement districts. Under the "objection method," the street improvement district is created by ordinance of the mayor and city council. Notice must then be published one time each week for 20 days. If written objections to the district or the work are filed by the owners of more than 50 percent of the front footage of the affected property, the ordinance is repealed; otherwise bids will be let, the work will be done, and cost of the improvements will be assessed according to benefits received. §§ 16-619 to 16-622, R. R. S. 1943. Under the "petition method," the street improvement district must be created if the owners of "three-fourths of the front footage" of the property along a street petition therefor. The district is created, the work is done, and the costs are assessed in the same manner as under the objection method. § 16-624, R. R. S. 1943. Neither of those methods are involved here, but they are instructive on the use and scope of the third, or "gap and extend" method. The important thing to note is that both of the first two methods are of long standing, having been available since at least 1917, and that both require approval, or at least the acquiescence of the affected property owners in the proposed improvement and the resultant assessment.

The "gap and extend" law requires no approval by the property owners. But both the lan-

guage of the statute and its legislative history indi-cate that it is an exception to the rule, and that the exception is a limited one. Section 18-2001, R. R. S. 1943, provides that: "Any city or village may, *without petition or creating a street improvement district,* grade, curb, gutter and pave any portion of a street *otherwise paved* so as to make one continuous paved street, but the portion to be so improved shall not exceed two blocks including intersections or thirteen hundred and twenty-five feet whichever is the lesser, and such city or village may also grade, curb, gutter and pave any unpaved street or alley which intersects a paved street for a distance of not to exceed one block on either side of such paved street." (Emphasis supplied.)

Section 18-2003, R. R. S. 1943, authorizes the special assessments for the improvements made pursuant to section 18-2001, R. R. S. 1943.

The "gap and extend" law was introduced as L.B. 243 in 1963. At that time, street improvement districts had long been utilized. The following is the introducer's statement of intent: "Hard surface paving in most cities and villages was constructed one district at a time and consequently there are frequently gaps in municipal paving systems of one or two blocks and due to the owner's unwillingness to cooperate in completing this improvement, it remains a traffic hazard as well as remaining an incompleted improvement." Senator Albert A. Kjar, quoted by way of explanation in Committee on Public Works, Statement on L.B. 243, 1963.

It is clear that the Legislature expected the "gap and extend" procedure to be used only in the case of a section which was not otherwise paved. Neither the City nor this court is free to expand this intent to include a section which is paved but not up to standards — standards which the City is free to set. The legislative power and authority delegated to a city to construct local improvements and levy assessments

for payments thereof is to be strictly construed, and every reasonable doubt as to the extent or limitation of such power and authority is resolved against the city and in favor of the taxpayer. See Matzke v. City of Seward, 193 Neb. 211, 226 N. W. 2d 340.

Although it is less than clear, we think this rule of strict construction also rules out the City's argument that an assessment for curbing and guttering may stand even though the assessment for paving is void. Referring again to the statute, it permits the City to "curb, gutter and pave any portion of a street *otherwise paved*." (Emphasis supplied.) § 18-2001, R. R. S. 1943. The Legislature could have reached the result argued for by the defendants by allowing the City to "curb, gutter and pave any portion of a street *otherwise curbed, guttered, or paved*." It appears the words "curb" and "gutter" were put in in recognition of the strict construction rule, i.e., to make it clear that the improvement which the statute allows need not be limited to a flattop road. This does not change the fact that *none* of the improvements may be made under this method on a section which is already paved. The City, having failed to comply with the requisites of the various statutes authorizing special assessments, was without authority to make the levy in question.

The City argues, however, that the plaintiffs, having seen the work in progress and accepting the benefits, are now estopped to protest the special assessments. It must be remembered, though, that no notice was given to the property owners prior to the commencement of work. In any event, "We have held in numerous cases, where special assessments against property to pay the cost of paving are void, knowledge of the proceedings and of the construction of the improvement will not estop the owner from avoiding liability therefor, and they cannot be enforced solely on the ground of the benefits of the improvements to the owners of abutting lots or

lands. Harmon v. City of Omaha, 53 Neb. 164, 73 N. W. 671; Leavitt v. Bell, 55 Neb. 57, 75 N. W. 524; Batty v. City of Hastings, 63 Neb. 26, 88 N. W. 139; Henderson v. City of South Omaha, 60 Neb. 125, 82 N. W. 315; John v. Connell, 61 Neb. 267, 85 N. W. 82; Morse v. City of Omaha, 67 Neb. 426, 93 N. W. 734." City of McCook v. Red Willow County, 133 Neb. 380, 275 N. W. 396.

The plaintiffs also argue that the grade of the street was changed in disregard of section 16-615, R. R. S. 1943. Without comment on any action they may have for damages, we simply state that the record does not adequately reflect that there was a change in grade nor that any damages were sustained.

The special assessment being void for the reasons stated, the order dismissing the plaintiffs' petition is reversed.

REVERSED.