ROADRUNNER DEVELOPMENT, INC., ET AL., APPELLANTS,
v. ARTHUR AND SHARON KAY SIMS ET AL., APPELLEES.

330 N.W.2d 915

Filed March 4, 1983.   No. 82-204.

James H. Truell, for appellants.

James I. Shamberg of Cronin, Shamberg & Wolf, for appellees Rockwell.

Carl E. Willard, for appellees Hayes and Larkins.

Krivosha, C.J., White, and Caporale, JJ., and Buckley, D.J., and Colwell, D.J., Retired.

Caporale, J.

The trial court dismissed the last amended petition of the plaintiffs-appellants, Roadrunner Development, Inc. (Roadrunner), and John and Ruth Goding, husband and wife (Godings). The trial court had earlier sustained the demurrers of certain of the defendants-appellees, and plaintiffs elected to stand on the aforesaid petition. Plaintiffs appeal from the order of dismissal. We affirm.

Plaintiffs filed this declaratory judgment action to declare covenants restricting the use of certain described lands null and void, to set them aside, and to enjoin their enforcement. The relief is sought as to the named defendants-appellees "individually and as representatives of a class and all owners of lots in the subdivision."

According to the facts recited in the operative petition, in July of 1955 Godings agreed to purchase two lots in Roush Subdivision, Hall County, Nebraska. The purchase price was paid in monthly installments pursuant to a contract which specified certain use restrictions. These restrictions, among other things, required that the land be used only "for dwelling .... No dwelling shall be constructed on less than 8,000 sq. feet." In 1960 or 1966, it is not clear when since both dates are alleged, but in any event 2 days prior to the deed of conveyance delivered to the Godings pursuant to their contract, the owners of the subdivision executed and filed certain restrictive covenants which differ from those in the Godings' agreement and require that the property "be used for single family residential development of ranch style design only and requiring a minimum 50 foot front yard setback of any structure upon the lot. No multi-family, two-story or commercial establishments of any kind are to be erected." The petition states all subdivision lots "have been sub-

ject" to the last-described restrictions except for Block 4, which is owned by defendant-appellee Grand Island Tennis Club, Inc., and is used as a tennis establishment. Lots 5, 7, 8, and 9 in Block 2 have also allegedly never been subject to the last-described restrictions. In November of 1979 Roadrunner obtained title to 31 lots located in Blocks 1, 2, 5, and 6. None of the exempted lots in Block 2 were involved in the Roadrunner transaction. The petition further alleges that when the subdivision was dedicated and the restrictive covenants filed, the property within the subdivision was on the outskirts of the city of Grand Island and the property surrounding it was agricultural or single-family residential in nature. According to the petition, time, owing to the general growth of the city of Grand Island, has changed the uses to which property in "the neighborhood and in the vicinity" of plaintiffs' property is being put. Among other things, a mobile home court has been established to the south of the subdivision, traffic has increased, and the city of Grand Island has adopted a master plan calling for multifamily residential development in "the area of" Blocks 1, 2, 5, and 6 for the purposes of acting as a buffer between commercial and single-family residential development. Blocks 3 and 4 of the subdivision have been zoned as commercial property. Roadrunner concedes it seeks to enhance the value of the property it has purchased by changing the uses to which it may be put.

The defendants-appellees Randall D. and Donna L. Rockwell and Anita Elstermeier demurred on the grounds that the petition failed to state a cause of action and that there was a misjoinder of parties plaintiff. Defendants-appellees Reuben L. and Vivian Hayes, Iva M. Larkins, and Scott and Terri Bilslend elected to demur only on the ground that the petition failed to state a cause of action.

We turn our attention first to the purported class action nature of this action. Neb. Rev. Stat. § 25-319

(Reissue 1979) provides: "When the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." Even if there were no due process concerns with respect to an effort to adjudicate the property rights of persons not served with process, an issue we need not now address and therefore do not now decide, the operative petition contains no facts from which it can be concluded that it is "impracticable" to bring all of the property owners in Roush Subdivision before the court. The petition therefore fails to state a cause as a class action against anyone. We must also determine, however, whether the action may proceed against the individual and named defendants. See *Blankenship v. Omaha P. P. Dist.,* 195 Neb. 170, 237 N.W.2d 86 (1976).

Neb. Rev. Stat. § 25-806 (Reissue 1979) provides that a defendant may demur to the petition when, inter alia, it appears on its face that "there is a defect of parties, plaintiff or defendant," or that "the petition does not state facts sufficient to constitute a cause of action."

The Roadrunner and the Godings transactions are not the same. Not only did they take place at different times and involve different lands, but the Godings' claimed right of action in part rests upon the variance between the restrictive covenants filed prior to the conveyance of title to them and those specified in their purchase agreement. Those facts are not available to the plaintiff Roadrunner. The fact that both Roadrunner and the Godings seek the same relief does not, in and of itself, entitle them to join in a single action. Those defendants who demurred on the ground there was a misjoinder of parties plaintiff were correct, and the trial court properly sustained those demurrers.

As to the defendants who did not demur on the misjoinder ground, we must determine whether the

petition states a cause of action on behalf of either Roadrunner or the Godings. For purposes of that examination we must accept as true all facts well pleaded, but we do not accept as true facts not well pleaded, nor do we accept as true conclusions of law or of the pleader. *Shelton v. Board of Regents,* 211 Neb. 820, 320 N.W.2d 748 (1982).

*Plumb v. Ruffin, ante* p. 335, 328 N.W.2d 792 (1983), teaches us that in determining whether the character of a neighborhood has so changed that the existing restrictive covenants can no longer be enforced, the test ordinarily is whether the original purpose and intention of the parties creating the restrictions are no longer of substantial benefit to the residents. The question is not whether suitable persons will in the future purchase property in the addition, but whether the restrictions still preserve to the addition its character created by the covenants at issue. In *Plumb* the defendant had attempted to show, as plaintiffs have alleged here, that the neighborhood surrounding the lots in question had changed to such an extent that the original purpose and intention of the parties in creating the restrictions could no longer be accomplished. There was evidence that some variance from the restricted single-family use of some lots had taken place and that there was commercial development, in accordance with the original plans, in areas immediately adjacent to defendant's lots. The remaining portions of the subdivision continued as residential property. In upholding the covenants, we noted the area had nonetheless developed as originally intended. Plaintiffs cite *Lund v. Orr,* 181 Neb. 361, 148 N.W.2d 309 (1967), which contains much of the same language as does *Plumb,* but held that, where 6 months later the purchaser's grantor sold all remaining land in the quarter section for the construction and development of a packing plant, the purchaser was no longer bound by covenants restricting his 1-acre tract to residential use. Plaintiffs also cite *Reed v. Williamson,* 164

Neb. 99, 82 N.W.2d 18 (1957), which upheld restrictive covenants for the stated period of their duration, thus preventing the drilling of oil and gas wells for that period. The test applied was part of the rule restated in *Plumb, supra.*

The question here, therefore, becomes whether plaintiffs have stated facts sufficient, if proved, to establish that, irrespective of whether suitable persons will in the future purchase property in Roush Subdivision, the character of the neighborhood has so changed that the original purpose and intention of the parties creating the restrictions are no longer of substantial benefit to the subdivision's residents and the character of the subdivision as a single-family residential area cannot be maintained. The facts well pleaded in these respects are that the use of certain lots within the subdivision is unrestricted and that the general plan of development of the area has been thwarted by growth and a change in the surrounding areas. As to the first complaint, there is nothing particularly inconsistent with the presence of a tennis club operation within a residential area, nor are there any allegations as to how Block 4 came to be devoted to such use. As to the other unrestricted lots, there is no allegation as to what, if any, use is being made of them. As to the second complaint, the fact that adjoining or surrounding property is used for business purposes does not, at least in and of itself, change the character of the specific subdivision so that the property therein may no longer be entitled to have the restriction enforced. There are no allegations in this petition that the Roush Subdivision per se has changed, only that certain parcels either surrounding it or in the same general vicinity as a whole have changed. The actions of the city through rezoning in master plan designations are irrelevant with respect to the enforcement of restrictive covenants. In such a situation the applicable restrictive covenant continues to override and supersede any less restrictive zoning

designations. See, *Staninger v. Jacksonville Expressway Authority,* 182 So. 2d 483 (Fla. App. 1966); *Morgan v. Matheson,* 362 Mich. 535, 107 N.W.2d 825 (1961); *Tower v. Mudd Realty Company,* 317 P.2d 753 (Okla. 1957); *Burgess v. Magarian,* 214 Iowa 694, 243 N.W. 356 (1932).

In short, there are no well-pleaded facts from which it can be concluded the restrictions do not still preserve the character of the property contained in Roush Subdivision as a single-family residential district and that the original purpose and intention of the parties creating the restrictions pursuant to the general scheme has been destroyed such that the changed condition means the restrictions are no longer of a substantial benefit to the residents of that subdivision. Indeed, a reading of the totality of the allegations contained in plaintiffs' petition suggests that Roush Subdivision itself has been largely untouched by any substantial changes. It cannot be said from the allegations in this petition that there has been any change which would even begin to represent a change of such magnitude that the original plan, purpose, and scheme had been so destroyed as to render the benefits of the restrictive covenants inoperable. The trial court was therefore correct in sustaining the demurrers grounded on the failure of the petition to state a cause of action by Roadrunner.

The same must be said as to the Godings. As pointed out earlier, their installment sales contract contemplating certain restrictions was executed in July of 1955; in 1960 or 1966 different restrictions were filed and 2 days later title was conveyed to the Godings; it was not until March 1981, or at least 15 years after the conveyance to the Godings, that the operative petition was filed. This jurisdiction is committed to the doctrine that where laches of the plaintiff and the staleness of his claim are apparent from the petition, objection thereto may be taken by demurrer. *Kozina v. Watkins Lumber Co.,*

146 Neb. 594, 20 N.W.2d 606 (1945); *Bend v. Marsh,* 145 Neb. 780, 18 N.W.2d 106 (1945). Laches does not, however, grow out of the mere passage of time but is founded upon the inequity of enforcing a claim where there has been a change in the condition of the property or in the relations of the parties. *Kozina v. Watkins Lumber Co., supra; Bend v. Marsh, supra.* The gravamen of the Godings' claim is that the land conveyed to them is different in quality than that which they contracted to purchase. Accepting, as we here must, the truth of the factual allegations leading to that conclusion, the Godings would appear, at first blush, to have stated a cause of action. See *Grand Island Hotel Corp. v. Second Island Development Co.,* 191 Neb. 98, 214 N.W.2d 253 (1974), holding that the covenants of warranty and title contained in a deed were breached by the existence of a paramount leasehold interest in a third party. Had the Godings elected to bring an action for damages, they would have had, at the latest, 5 years from the date of the conveyance to them. This jurisdiction is also committed to the rule that a plaintiff whose petition shows apparent laches on its face must generally plead and prove an excuse for the delay. *Baxter v. National Mtg. Loan Co.,* 128 Neb. 537, 259 N.W. 630 (1935). No such excuse has been pled by the Godings.

The trial court, therefore, also correctly sustained those demurrers resting on the sole ground that the operative petition failed to state a cause of action as to each defendant.

AFFIRMED.