MARGARET M. IVERSON, APPELLEE, V. CITY OF NORTH PLATTE, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT.

500 N.W.2d 574

Filed May 28, 1993.    No. S-91-219.

Douglas L. Stack, of Girard and Stack, P.C., for appellant.

Jess C. Nielsen, of Nielsen & Birch, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.

This is an appeal from the district court for Lincoln County's granting of appellee Margaret M. Iverson's motion for summary judgment. Appellee filed a combined petition in error and petition on appeal challenging the creation of a gap paving district by the City of North Platte (City). She contended that the City exceeded its statutory authority to create gap paving districts under Neb. Rev. Stat. § 18-2001 et seq. (Reissue 1991) when it "stacked" multiple districts. Accordingly, appellee claimed, the City was without authority to assess her property for the resulting paving project. The district court granted

appellee's motion for summary judgment, whereupon the City timely appealed to this court. We affirm.

The appellee is the owner of a hayfield adjacent to Pacific Street in North Platte, Nebraska. Prior to 1989, Pacific Street was an unpaved road. On February 7, 1989, the mayor and city council of North Platte passed a resolution creating gap paving districts Nos. 140 and 141 in order to pave two one-block sections of Pacific Street:

> The Mayor and Council hereby find and determine that it is necessary and advisable that the City, under the authority granted by §§18-2001 to 18-2003 inclusive, R.R.S. Neb., 1943 as amended, cause the following unpaved streets within the City to be improved by grading, curbing, guttering and paving, together with necessary appurtenances, to-wit: Pacific Street from Second Street to Third Street [and] Pacific Street from Front Street to Sixth Street . . . .

Also on February 7, the mayor and council passed an ordinance "For the Creation of Paving District No. 744 in the City of North Platte . . . Ordering the Construction of Street Improvement Therein," to pave Pacific Street from 3d Street to 4th Street. Additionally, on August 1, the mayor and council passed a resolution creating gap paving district No. 143 (No. 143) in order to pave Pacific Street from 4th Street to 6th Street.

Through the creation of these regular and gap paving districts, the City paved Pacific Street for a total of five blocks, including that part of the street which was adjacent to appellee's property. On December 5, counsel for appellee appeared at the city council meeting to object "to the creation of Gap Paving District No. 143 and the assessment of any of the cost of paving to" appellee's property. Thereafter, on December 19, appellee's property was assessed $12,146 for her share of the paving done pursuant to No. 143. The property, according to the county's valuation, was worth $10,465.

On January 3, 1990, appellee, in compliance with Neb. Rev. Stat. § 25-1931 (Reissue 1989), filed a combined petition in error and petition on appeal in the district court for Lincoln County. The petition contended that the City erred in attempting to create No. 143 and in attempting to assess part of

the costs resulting therefrom against appellee's property. The district court found that the City had improperly used the gap paving provisions of § 18-2001 et seq. to "circumvent the necessity of creating a paving district which would require consent of the landowners prior to its initiation," and it granted appellee's motion for summary judgment. The City appeals.

Before we address the City's assignments of error concerning the district court's holding, we first dispose of appellee's argument concerning the City's authority to initiate improvements on property outside of its corporate limits. The appellee contends that the City was without authority to assess her property because, although it is situated along North Platte's corporate limits, it lies outside those limits and could not be improved by the City. However, Neb. Rev. Stat. § 16-617 (Reissue 1991) provides that the mayor and council of a city of the first class such as North Platte "shall have power to make improvements of any street . . . which divides the city corporate area and the area adjoining the city . . . ." The record shows that appellee's land lies next to Pacific Street where it divides the city corporate area from the area adjoining the city. Accordingly, under § 16-617, the City acted within its authority when it made the disputed improvements on Pacific Street.

The appellee further contends that although § 18-2003 authorizes the mayor and council to "levy and collect special taxes and assessments upon the lots and parcels of real estate *adjacent to or abutting upon* the portion of the street or alley thus improved," the City could not assess appellee's property because it is not "adjacent to or abutting upon" Pacific Street. Appellee argues that because the City purchased a 20-foot-wide strip of her property along Pacific Street in 1985 to be dedicated for a right-of-way for Pacific Street, her land is no longer "adjacent to or abutting upon" the improved Pacific Street, but instead is separated from it by the 20-foot buffer. Accordingly, appellee argues that she cannot be assessed for improvements thereon. Such an argument ignores the meaning of "adjacent," however. This court defined the term in *Freeman v. City of Neligh*, 155 Neb. 651, 659-60, 53 N.W.2d 67, 72 (1952), where we stated:

> In Hoopes v. City of Omaha, 99 Neb. 460, 156 N. W.

1047, this court said: "The word 'adjacent,' in the popular sense thus used, obviously means something in addition to, or different from, 'abutting.' * * * In construing the word 'adjacent,' it was said in Dunker v. City of Des Moines, 156 Ia. 292: 'The word "adjacent" is, at least, somewhat indefinite. Ordinarily, it means "to lie near, close, or contiguous." Webster. Even in its strictest sense it means no more than lying near, close, or contiguous, but not actually touching.' This definition is approved in Hennessy v. Douglas County, 99 Wis. 129; Northern P. R. Co. v. Douglas County, 145 Wis. 288."

Under the above definition, appellee's land is clearly adjacent to Pacific Street as required under § 18-2003. Accordingly, ignoring for the moment the considerations addressed below, the City did have the authority to assess appellee's property for adjacent street improvements. We turn, then, to the City's assignments of error.

The City contends that the district court erred in (1) finding that any and all assessments arising from No. 143 are void, (2) finding that the City exceeded the limitations imposed on it by § 18-2001 et seq., and (3) misapplying the law to the facts.

In an appeal from the levy of special assessments, the party contesting the assessment has the burden of showing invalidity. *Brown v. City of York*, 227 Neb. 183, 416 N.W.2d 574 (1987). In all appeals of such actions, the appellate court must, upon review de novo on the record, retry the issues of fact involved and reach an independent conclusion as to the findings required under the pleadings and all the evidence, without reference to the conclusion reached by the district court or the fact that there may be some evidence in support thereof. *Garden Dev. Co. v. City of Hastings*, 231 Neb. 477, 436 N.W.2d 832 (1989); *Equitable Life v. Lincoln Cty. Bd. of Equal.*, 229 Neb. 60, 425 N.W.2d 320 (1988); Neb. Rev. Stat. § 19-2422 (Reissue 1991); Neb. Rev. Stat. § 25-1925 (Reissue 1989).

A municipality desiring to specially assess property owners for the cost of street improvements must rely on one of three methods to do so. The first two of these, the "objection method" and the "petition method," involve creating formal street improvement districts. Under the objection method, a

street improvement district is created by ordinance of the mayor and city council. Notice of the created district must be published, and if written objections to the district are filed by owners of more than 50 percent of the front footage, the ordinance is repealed. If objections are not received, the work is done and the property owners are assessed the cost. See Neb. Rev. Stat. §§ 16-619 to 16-622 (Reissue 1991).

Under the petition method, a street improvement district must be created if the owners of three-fourths of the property fronting the street petition for such improvement. A district is then created, the work done, and all of the owners of front footage are assessed in the same manner as under the objection method. See Neb. Rev. Stat. § 16-624 (Reissue 1991).

Gap paving districts, conversely, require no approval by the property owners. They are statutory creations which allow a city to "fill in the gaps" between paved streets without giving adjacent property owners the right of remonstrance or protest. Cities need merely decide unilaterally to pave the gaps, and the cost is then assessed against the property owners. The relevant statute provides in part:

> Any city or village may, without petition or creating a street improvement district . . . pave any portion of a street otherwise paved so as to make one continuous paved street, but the portion to be so improved shall not exceed two blocks including intersections or thirteen hundred and twenty-five feet whichever is the lesser, and such city . . . may also . . . pave any unpaved street . . . which intersects a paved street for a distance of not to exceed one block on either side of such paved street.

§ 18-2001.

Section 18-2002 similarly allows a city to pave "any side street or alley within its corporate limits connecting with a major traffic street for a distance not to exceed one block from such major traffic street." Section 18-2003 authorizes the special assessments for the improvements made pursuant to § 18-2001. Section 18-2004 provides that nothing in §§ 18-2001 to 18-2004 shall be construed to repeal or amend any statutes not specifically repealed, and provides that §§ 18-2001 to 18-2004 shall be construed as an independent and complete act.

These statutes are frequently referred to as the "gap and extend law."

In the case at bar, the City paved five blocks of Pacific Street by utilizing three gap paving districts and one regular paving district. Approval by the affected property owners was therefore needed only for the single regular paving district. See §§ 16-619 to 16-622.

The paving project was achieved by a number of actions taken by the City. First, on February 7, 1989, the City passed a resolution creating gap paving districts Nos. 140 and 141. These districts, created under the provision of § 18-2001 which allows a city to pave any unpaved streets which intersect a paved street for a distance of one block on either side of such paved street, made up one paved block each on either end of the five-block paving project. On the same day, the City passed an ordinance under §§ 16-619 to 16-622 creating paving district No. 744, which added another block of pavement onto the block created by No. 140, for a total of two blocks paved on the south end of Pacific Street. This left a gap of two blocks unpaved between the north end of No. 744 and the south end of No. 141. On August 1, 1989, the City filled this gap by passing a resolution creating No. 143, which began at the south end of No. 141 and continued for two blocks to the north end of No. 744.

The appellee contends that the paving of Pacific Street resulted from the City's " 'scheming' to close a 6-block [sic] gap" on the street. Brief for appellee at 9. While we stop short of accusing the City of so scheming, we do find that the City impermissibly attempted to use § 18-2001 to pave two blocks of Pacific Street when it created No. 143.

Both the language of § 18-2001 et seq. and its legislative history indicate that although the gap and extend law is an exception to the rule that property owners must consent to special paving assessments, the exception is a limited one. *Turner v. City of North Platte*, 203 Neb. 706, 279 N.W.2d 868 (1979). The gap and extend law was introduced as L.B. 243 in 1964. The introducer, Sen. Albert A. Kjar, provided the following as the bill's statement of intent:

> Hard surface paving in most cities and villages was constructed, one district at a time and, consequently, there

are frequently gaps in municipal paving systems of one or two blocks and due to the owner's unwillingness to cooperate in completing this improvement, it remains a traffic hazard as well as remaining an incompleted improvement.

Statement of Purpose, L.B. 243, Committee on Public Works, 73d Leg. (Feb. 8, 1963).

As noted by the district court, further reading of the statute's history "leaves the clear impression that the legislature was only passing a provision which would allow municipalities to fill in gaps of only two blocks, and not a provision which would allow a municipality to build gap upon gap and thereby pave an area longer than two blocks."

In 1974, the Legislature proposed to amend § 18-2001 to increase the distance in feet that a gap district could improve a street. The bill also sought to allow the greater of the distance in feet or the number of blocks to control in regard to the size of gap that could be paved, instead of the lesser. The change in distance was approved, while the attempt to allow the greater of the two measures to control failed. Although the floor debate on these matters is indicative of the limitations of the gap and extend law, the importance of the debate to this case concerns the intent behind the legislation and whether a municipality could tack gaps upon gaps in order to eliminate the requirement of obtaining approval of the people affected by a paving district.

When asked if tacking "two blocks on two blocks . . . is . . . acceptable," Sen. Harold T. Moylan, who introduced L.B. 652, responded that the "portion to be so improved shall not exceed two blocks." Floor Debate, 83d Leg., 2d Sess. 5004 (Jan. 24, 1974). Sen. David H. Stahmer, a proponent of the bill, also added that its purpose was "strictly to close a gap. Not to make extensions . . . ." *Id.* at 5007. Additionally, Sen. Herbert J. Duis, another proponent of the bill, in response to a question of whether the statute could be used to pave an interminable distance of a street over time, stated that in order to pave more than a single gap, a city "would have to create paving districts in [a] comprehensive plan." *Id.* at 5009.

The power and authority delegated to municipalities to

construct improvements and to levy special assessments for their payment is strictly construed, and every reasonable doubt as to the extent or limitation of such power and authority and the manner of exercise thereof is resolved in favor of the taxpayer. *Garden Dev. Co. v. City of Hastings*, 231 Neb. 477, 436 N.W.2d 832 (1989); *Turner v. City of North Platte, supra*. It is clear that the Legislature intended that the gap and extend procedure be used only to fill one- or two-block unpaved gaps which exist between paved streets. To pave areas beyond these restrictions, a municipality must receive the approval of the affected property owners through one of the two statutory methods set out above.

In the present case, the City used § 18-2001 improperly to pave a three-block area with two gap paving districts, Nos. 141 and 143. In effect, the City attempted to circumvent the necessity of creating a paving district which would require consent of the landowners prior to its initiation. This is clearly a gap-stacking strategy of the type which the Legislature intended to prevent and not a legitimate use of the gap and extend law. Allowing a municipality to exceed the specific limitations of the act would defeat and run afoul of the purpose and intent of the Legislature in establishing the gap paving district statutes. Therefore, having failed to comply with the requisites of the various statutes authorizing special assessments, the City was without authority to make the levy in question.

The City argues that No. 143 paved only a one-block area which when combined with No. 141 resulted in a two-block area being paved. Thus, the City's reasoning goes, while it may not have been in the interest of civic economy to create two gap paving districts for a single two-block area, the two-block area is still within the guidelines of § 18-2001. This argument hinges on the premise that the No. 143 project on Pacific Street, from 4th Street to 6th Street, is one block long. The City claims that, because 5th Street has not yet been extended through this undeveloped area, the area from 4th Street to 6th Street is only one, albeit large, block. We disagree. Assuming, arguendo, that the numeration of the streets is extraneous, the plat of the area clearly shows that 4th Street to 6th Street is intended to be a two-block area which will have 5th Street running through it

when the area is developed. We therefore find the City's argument to be unpersuasive and determine that No. 143 covers a two-block area.

The City also appears to contend that appellee, having been aware of the work and having received its benefits, is estopped from protesting the special assessment. This court has held in numerous cases that " 'where special assessments against property to pay the cost of paving are void, knowledge . . . of the improvement will not estop the owner from avoiding liability therefor, and they cannot be enforced solely on the ground of the benefits of the improvements to the owners of abutting lots or lands. . . .' " *Turner v. City of North Platte*, 203 Neb. 706, 714-15, 279 N.W.2d 868, 873 (1979). See, also, *City of McCook v. Red Willow County*, 133 Neb. 380, 275 N.W. 396 (1937); *Batty v. City of Hastings*, 63 Neb. 26, 88 N.W. 139 (1901); *Leavitt v. Bell*, 55 Neb. 57, 75 N.W. 524 (1898); *Harmon v. City of Omaha*, 53 Neb. 164, 73 N.W. 671 (1897). This argument is also without merit.

The City further contends that declaratory relief should not have been granted by the district court because not all taxpayers affected by the assessment were joined as parties, as required by Neb. Rev. Stat. § 25-21,159 (Reissue 1989) of the Uniform Declaratory Judgments Act. The City argues, without citing any authority, that the order of the district court declaring that "any and all assessments arising from Gap Paving District No. 143 are void" is overbroad because no other affected taxpayers were joined as parties to the action. Such an argument is without merit. This court has stated that "[i]n a taxpayer's action potentially all of the taxpayers and citizens are parties." *Niklaus v. Abel Construction Co.*, 164 Neb. 842, 850, 83 N.W.2d 904, 910 (1957). However, the fact that a number of taxpayers may be potential parties does not mean that they are *indispensable* parties. "There is no requirement that all taxpayers who might be affected in some manner by the result of the litigation be made parties to the action." *Christensen v. City of Tekamah*, 230 Neb. 576, 579, 432 N.W.2d 798, 800 (1988).

Accordingly, we affirm the decision of the district court that the creation of No. 143 was improper and that any and all

assessments arising from it are void and may not be collected by the City.

AFFIRMED.