GEORGE ROBERT BENESCH, IN PERSON AND FOR ALL PERSONS SIMILARLY SITUATED, APPELLANT, V. CITY OF SCHUYLER, NEBRASKA, APPELLEE.

555 N.W.2d 63

Filed October 8, 1996.   No. A-95-463.

Raymond E. Baker, of Law Offices of Raymond E. Baker, P.C., for appellant.

Clark J. Grant, of Grant, Rogers, Maul, Grant & Dake, for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and MUES, Judges.

MUES, Judge.

## INTRODUCTION

George Robert Benesch appeals from the dismissal of his petition challenging a special assessment for street improvements levied pursuant to Nebraska's "gap and extend" law, Neb. Rev. Stat. §§ 18-2001 to 18-2005 (Reissue 1991). From our de novo review of the record, we find that the portion of the street in question was previously paved and the special assessment is therefore void.

## STATEMENT OF CASE

Benesch is the owner of property abutting Denver Street between 8th and 10th Streets in the City of Schuyler, Nebraska. On April 2, 1991, the mayor and city council of Schuyler adopted a resolution to improve Denver Street from 9th to 10th Streets and Denver Street from 8th to 9th Streets by grading, curbing, guttering, and paving said sections. The cost of such improvements, excepting street intersections, was to be assessed against the property owners abutting these sections. Minutes from the April 1991 council meeting reveal that some abutting property owners, including St. John's Lutheran Church by representative and Lumir Spulak and his wife, were present at the meeting and approved of these improvements. Moreover, the Spulaks, along with another abutting property owner, stated that they would approve an 80-percent assessment for such improvements.

Prior to this resolution, the street in question was covered by a solid aggregate of compacted layers of oil and gravel approximately 3 to 5 inches thick, creating a firm surface. Pursuant to the city's resolution, this material was removed and replaced with concrete approximately 7 inches thick. On March 24, 1992, the mayor and city council of Schuyler, sitting as a board of equalization and assessment, levied and specially assessed the total sum of $24,218 against the owners of property abutting Denver Street from 8th to 10th Streets. Benesch was individually specially assessed in the amount of $1,612. It is not clear from the record how much Benesch has paid pursuant to this assessment; however, he does appear to have paid a portion of the $1,612.

On October 12, 1993, Benesch filed a petition in district court "for the benefit of himself and all such interested persons," asserting that said assessment was fundamentally defective and therefore void because the portion of Denver Street in question was already paved and, therefore, beyond the authority of the "gap and extend" laws. Benesch sought injunctive relief from further collection of moneys owed and a refund of all sums paid. Following an evidentiary hearing on November 22, 1994, the district court dismissed Benesch's petition, stating in total: "[T]he Court finds generally for the Defendant and

against the Plaintiff and the Plaintiff's petition is dismissed at their cost." No further findings were set forth in the court's order filed March 13, 1995. The journal entry overruling Benesch's motion for a new trial was filed on April 13, 1995, and this appeal timely followed.

## ASSIGNMENTS OF ERROR

Benesch assigns four errors on appeal which may be summarized in two. The district court erred in (1) failing to find that Denver Street between 8th and 10th Streets was previously paved, thereby making a special assessment under the "gap and extend" law void, and (2) disallowing Benesch to bring this action as a class action suit.

## STANDARD OF REVIEW

A collateral attack upon a special assessment is a proceeding in equity, which an appellate court reviews de novo on the record. *North Platte, Neb. Hosp. Corp. v. City of North Platte*, 232 Neb. 373, 440 N.W.2d 485 (1989). In its de novo review, the appellate court must retry the issues of fact involved and reach an independent conclusion as to the findings required under the pleadings and all the evidence, without reference to the conclusions reached by the district court or the fact that there may be some evidence in support thereof. *Iverson v. City of North Platte*, 243 Neb. 506, 500 N.W.2d 574 (1993); Neb. Rev. Stat. § 25-1925 (Reissue 1995). Regarding questions of law, an appellate court has an obligation to reach its own conclusions independent of those reached by the lower court. *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 550 N.W.2d 640 (1996).

## ANALYSIS

The parties agree that this action constitutes a collateral attack upon the street assessment and is not a direct appeal in accordance with Neb. Rev. Stat. § 19-2422 (Reissue 1991). A property owner may collaterally attack a special assessment only for the limited purposes of fraud, actual or constructive, a fundamental defect, or want of jurisdiction. *County of Red Willow v. City of McCook*, 243 Neb. 383, 499 N.W.2d 531 (1993). All defects, irregularities, and inequalities in the mak-

ing of an assessment, or in proceedings prior thereto, not raised by appeal from the assessment are waived and cannot be questioned in the collateral proceedings. *North Platte, Neb. Hosp. Corp., supra*. The property owner attacking the special assessment as void has the burden of establishing its invalidity. *NEBCO, Inc. v. Board of Equal. of City of Lincoln*, 250 Neb. 81, 547 N.W.2d 499 (1996).

In sum, Benesch's argument on appeal is that because the street in question was previously paved, Nebraska's "gap and extend" law does not apply and the city was without authority to levy the special assessment at issue. Therefore, according to Benesch, said assessment is void due to a fundamental defect and want of jurisdiction.

Briefly, Nebraska's "gap and extend" law provides a method by which a city may, without prior approval from property owners, unilaterally decide to pave a street and assess the costs of such improvements against abutting property owners. Section 18-2001 provides in relevant part:

> Any city or village may, without petition or creating a street improvement district, grade, curb, gutter and pave any portion of a street otherwise paved so as to make one continuous paved street, but the portion to be so improved shall not exceed two blocks including intersections or thirteen hundred and twenty-five feet whichever is the lesser . . . .

This method of specially assessing property owners for street improvements is unique in that, unlike other special assessments, it does not require approval, or at least the acquiescence, of the affected property owners. See, Neb. Rev. Stat. § 16-620 (Reissue 1991) (ordinance creating improvement district repealed if more than 50 percent of abutting property owners object); Neb. Rev. Stat. § 16-624 (Reissue 1991) (improvement district must be created if three-fourths of abutting property owners petition for such). See, also, *Iverson, supra*; *Turner v. City of North Platte*, 203 Neb. 706, 279 N.W.2d 868 (1979). Although an exception to the general rule that property owners must consent to paving assessments, this exception created by the "gap and extend" law is only a limited one. *Id.*

The statement of the bill's introducer was set forth in *Iverson, supra*:

> "Hard surface paving in most cities and villages was constructed, one district at a time and, consequently, there are frequently gaps in municipal paving systems of one or two blocks and due to the owner's unwillingness to cooperate in completing this improvement, it remains a traffic hazard as well as remaining an incompleted improvement."

243 Neb. at 512-13, 500 N.W.2d at 578 (quoting Statement of Purpose, L.B. 243, Committee on Public Works, 73d Leg. (Feb. 8, 1963)).

■ The foregoing language was also quoted in *Turner, supra*. Similar to Benesch, the property owners in *Turner* argued that the "gap and extend" procedure may be used only in the case of previously unimproved street sections and that the street abutting their property was already paved. The issue as stated by the Supreme Court in *Turner* was whether the "gap and extend" provisions authorized the repaving or replacing of a street section already covered with a "hard surface." The Nebraska Supreme Court stated:

> It is clear that the Legislature expected the "gap and extend" procedure to be used only in the case of a section which was not otherwise paved. Neither the City nor this court is free to expand this intent to include a section which is paved but not up to standards — standards which the City is free to set. The legislative power and authority delegated to a city to construct local improvements and levy assessments for payments thereof is to be strictly construed, and every reasonable doubt as to the extent or limitation of such power and authority is resolved against the city and in favor of the taxpayer.

203 Neb. at 713-14, 279 N.W.2d at 873.

Accordingly, the special assessment levied in *Turner* taxing property owners for the costs associated with repaving an already paved street was rendered void as beyond the authority of the "gap and extend" law. *Turner*, however, does not provide guidance as to the type of hard surfaces which constitutes pavement within the meaning of the "gap and extend" provision, as

in that case the fact that the street was previously paved was not in dispute.

In the case now before this court, the city concedes that the "gap and extend" law is not available where a street is already paved. However, the city contends that Denver Street from 8th to 10th Streets was not paved prior to the 1991 street improvement project at issue. The issue presented on appeal is, therefore, what constitutes "pavement" for the purpose of Nebraska's "gap and extend" law. While the physical character of the street at issue presents a question of fact, we view the question of whether this street is "paved" within the meaning of the "gap and extend" law, as that provision has been interpreted by the Supreme Court as a question of law.

It is undisputed by the parties that the street in question received an application of three coats of oil and two coats of gravel in 1956. The cost associated with such was assumed by the property owners on a voluntary basis. It is further undisputed that these streets were "recoated" in 1975 by Brunswick Asphalt Company and that the property owners again were billed for such. The cost of "recoating" the two blocks was $239 and $211. The warrant issued by the City of Schuyler in association therewith describes the 1975 project as "Blacktop Streets."

The testimony, laboratory tests, and pictorial evidence adduced at trial establish that prior to 1991, the street at issue, although in disrepair in some areas, was generally covered by 3 to 5 inches of a solid aggregate composed of layers of oil and gravel, creating a firm, level surface. This conclusion is substantiated by this court's personal examination of exhibit 29, a piece of the street which purportedly is a typical representation of the street as it existed in its previous condition. The street is protected by stop signs as well as no-parking signs along its west side. Curbing and guttering have been present in the area since approximately 1941. During the early 1980's, the area at issue served as a detour route during a period of construction, causing increased traffic and an increased number of chuckholes. Routine maintenance on the section over the years has been performed by the city.

Raymond Hajek, an engineer, testified that in his expert opinion, Denver Street prior to 1991 was paved. Hajek based this opinion on photos, an inspection of Denver Street itself, and material removed from said street, as well as literature regarding asphalt paving. In contrast, Steven Parr, a licensed city and county highway superintendent, opined that Denver Street from 8th to 10th Streets had never been paved prior to this project. He described the material covering Denver Street prior to 1991 as "armor coating that was in layers."

The term "pave" was defined in *Terrill v. City of Lawrence*, 193 Kan. 229, 234, 392 P.2d 909, 913 (1964) as follows: "[t]o lay or cover with stone, brick, asphalt, concrete, or other material, so as to make a firm, level, or convenient surface for travel; to floor with brick, stone, or other solid material; to cover as a street; as, to *pave* a street." See Webster's Third New International Dictionary, Unabridged 1658 (1993).

Similarly, Webster's Tenth New Collegiate Dictionary 853 (1995) defines "pave" as follows: "to lay or cover with material (as asphalt or concrete) that forms a firm level surface for travel . . . to prepare a smooth easy way . . . ."

The definition of "paving" provided by the city's expert witness, Parr, is as follows: "materials that are installed on a prepared subgrade, that the materials installed have — would be concrete or asphalt with a thickness that would support vehicular traffic. The paving you would expect some longevity to that in the neighborhood of 15 to 20 years with normal maintenance."

Whether the material covering Denver Street from 8th to 10th Streets is characterized as "armor coating" as the city contends or "asphaltic material" as Benesch contends, the evidence establishes that the material consisted of a solid aggregate 3 to 5 inches thick made up of compacted layers of gravel and an oil-type substance. It created a firm, level surface for vehicular travel. In our opinion, these characteristics bring Denver Street from 8th to 10th Streets in its previous condition within the above-stated definitions of "pave" as that term was intended by the "gap and extend" law. As previously set forth, the scope of said law was clearly stated in *Turner v. City of North Platte*, 203 Neb. 706, 279 N.W.2d 868 (1979). That court determined that

the intent of the "gap and extend" law was to enable cities to provide streets with continuous hard surfaces. It was not intended to allow cities to improve existing hard surface streets in order to bring them up to standards set by the cities themselves.

From our de novo review of the record, including a personal examination of exhibit 29, we conclude that Denver Street from 8th to 10th Streets prior to 1991 was a paved street for the purpose of the "gap and extend" law. As such, the City of Schuyler was without authority to make the levy in question pursuant to said law and absent property owner approval or acquiescence in accordance with other statutory provisions, and the assessment at issue is therefore void.

The only issue remaining is whether Benesch has properly brought this suit as a class action. In determining whether a class action is properly brought, broad discretion is vested in the trial court. *Riha Farms, Inc. v. County of Sarpy*, 212 Neb. 385, 322 N.W.2d 797 (1982). Our review of this issue is hampered by the omission in the district court's order of any reasoning for the dismissal of the petition. Absent such, we do not know whether the court decided this issue against Benesch or whether it considered the issue at all. Notwithstanding, we find this suit was not properly brought as a class action.

Neb. Rev. Stat. § 25-319 (Reissue 1995) authorizes class actions "[w]hen the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court . . . ." This statute has been interpreted to require both a question of common or general interest *and* numerous parties so as to make it impracticable to bring all the parties before the court. *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). Benesch failed to show the existence of any of these requirements.

The record establishes that 11 abutting property owners were specially assessed as a result of the street improvement at issue. No showing was made that it would be impracticable to bring all such owners before the court. Moreover, as previously set forth, the record shows that at least some property owners appeared at the April 1991 city council meeting and approved

the resolution and the 80-percent assessment of the costs associated therewith. While there is no mathematical test for determining whether in a particular case the class is so numerous as to satisfy the numerosity requirement, *Hoiengs, supra*, absent a showing of the foregoing elements, we find that 11 parties do not satisfy the requirement in this case.

The finding that this suit is not properly maintainable as a class action, however, does not affect our ruling herein as it applies to Benesch as an individual. See, *Roadrunner Development v. Sims*, 213 Neb. 649, 330 N.W.2d 915 (1983); *Blankenship v. Omaha P. P. Dist.*, 195 Neb. 170, 237 N.W.2d 86 (1976). Therefore, the city is ordered to refund that amount previously collected from Benesch, and the special assessment at issue herein is declared void.

## CONCLUSION

The previous street was covered with compacted layers of gravel and oil creating a solid aggregate 3 to 5 inches thick and provided a level, firm surface for vehicular travel. It was, therefore, paved within the meaning of Nebraska's "gap and extend" law. The "gap and extend" procedure does not apply to a street already paved, and special assessments purportedly levied in accordance therewith are void. Notwithstanding that this suit was not properly brought as a class action, Benesch, as an individual, is granted the relief set forth above.

REVERSED.