No. 72,033

RUDOLPH J. BAUER and LOIS F. BAUER, *Appellees*, v. CITY OF OLATHE, KANSAS, *Appellant.*

(894 P.2d 823)

Opinion filed April 21, 1995.

*Rod L. Richardson,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause and was on the briefs for appellant.

*Brian L. Smith,* of Smith, Bellar & Tilton, P.C., of Kansas City, Missouri, argued the cause, and *Ralph E. Bellar* and *Kurt D. Tilton,* of the same firm, were with him on the brief for appellees.

*Donald L. Moler, Jr.,* general counsel, of Topeka, was on the brief for *amicus curiae* League of Kansas Municipalities.

*Mary F. Carson,* special assistant attorney general, and *Rebecca E. Floyd,* assistant attorney general, were on the brief for *amicus curiae* Robert T. Stephan, Kansas Attorney General.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Rudolph and Lois Bauer brought this action to enjoin the City of Olathe (Olathe) from proceeding with a special assessment on their property. They own property abutting a stretch of Pflumm Road, which recently has been improved. Acting on a petition pursuant to K.S.A. 12-6a01 *et seq.*, the General Improvement and Assessment Law, Olathe created an improvement district which includes the Bauers' property. Pursuant to K.S.A. 12-692, landowners within the improvement district who dedicated right-of-way for widening the street were exempted from payment of special assessments for right-of-way acquisition. The amount assessed against the Bauers' property includes a portion of the right-of-way acquisition costs. On cross-motions for summary judgment, the district court referred to its decision in *Davis v. City of Leawood* 257 Kan. 512, 893 P.2d 233 (1995), and granted injunctive relief on the ground, not briefed by the parties, that under K.S.A. 12-689 only city-at-large funds, not special assessments, may be used to improve a main trafficway. The appeal was transferred to this court pursuant to K.S.A. 20-3017.

The parties agree that there are no material issues of fact. The improvement district was established by city Resolution No. 90-1066. The resolution accepted the petition which had been filed by a majority of landowners within the proposed improvement district pursuant to K.S.A. 12-6a01 *et seq.* The Bauers did not sign the petition. The improvements requested were the widening of Pflumm Road from approximately College Boulevard to 119th Street and installation of curbs, sidewalks, street lights, storm drainage facilities, and control devices. In 1978, Olathe adopted Ordinance No. 691 designating Pflumm Road as a main trafficway pursuant to K.S.A. 12-685.

Resolution No. 90-1066 adopted the improvement district configuration, cost estimates, amount to be assessed to the district, method of assessment, and exemptions from the assessment proposed in the petition. An "average assessment" method was to be used in which assessed amount based on square footage is added to assessed amount based on footage fronting on the im-

proved street, and the sum is divided by 2. Areas dedicated for public right-of-way are excluded from this calculation. Estimated cost of the improvement was $1,478,788.77. $435,338.10 was to be assessed to the improvement district, excluding costs associated with right-of-way acquisition, and Olathe was to pay all costs in excess of $435,338.10. Olathe paid $135,515 for right-of-way acquisition, and the full amount was to be paid by the improvement district landowners who had not dedicated land necessary for widening the street. (The Bauers state that the amount was $135,517.25.) Landowners who dedicated or voluntarily conveyed land were exempted from payment of right-of-way acquisition costs. Olathe acquired the portion of the Bauers' property necessary for widening the street through condemnation and paid compensation for it.

The Pflumm Road improvements have been completed. The proposed assessment against the Bauers' property totals $55,543.39.

All property located within the city limits of Olathe and fronting on the improved portion of Pflumm Road was included in the improvement district except the Homestead Creek Subdivision. It previously had escrowed money to Olathe for the street improvements. The escrowed amount was based on $90 per front foot. The $435,338.10 assessed to the improvement district was figured on the same basis. The assessment levied against the Bauers' property equals $135 per front foot. The district court found that the Bauers' front foot assessment would be $96 if their share of right-of-way costs were excluded, and Olathe uses that finding in the statement of facts in its brief.

The parties briefed cross-motions for summary judgment on the propriety of landowners who dedicated right-of-way for widening Pflumm Road being exempted from payment of assessments for acquisition costs for the right-of-way. As previously noted, the district court decided this case on a legal theory which the parties had not argued or briefed. The district court disregarded the issues briefed and granted summary judgment in favor of the Bauers on the grounds the improvements to Pflumm Road must be financed under K.S.A. 12-689 and not by special assessments under K.S.A. 12-6a01 *et seq.*

Since the parties did not argue or raise the issue of using special assessments to finance improvements to Pflumm Road, no contention was made in the district court that Olathe had passed an ordinance designating Pflumm Road as a main trafficway pursuant to K.S.A. 12-685. However, in reaching its conclusion, the district court necessarily determined that Pflumm Road was a main trafficway within the meaning of K.S.A. 12-685. On appeal, Olathe complains about the district court's finding that Pflumm Road is a main trafficway absent an ordinance designating it as such. However, on January 19, 1995, the Bauers filed a motion requesting this court to take judicial notice of Olathe Ordinance No. 691, enacted in 1978, which designates Pflumm Road from 11th Street to 151st Street as a main trafficway. At oral argument, Olathe acknowledged that designation was made as stated in the Bauers' motion. Therefore, the trial court's determination that Pflumm Road was a main trafficway under K.S.A. 12-685 is not an issue in this appeal.

As a matter of law, the district court concluded that all costs attributable to improvements to main trafficways must be paid by the city-at-large under K.S.A. 12-689, that the improvements benefit the city as a whole, and that K.S.A. 12-6a01 *et seq.* does not authorize cities to create improvement districts to finance improvement costs for main trafficways. Applying that law to the facts of this case, the district court stated: "[I]n approving the petition for the Pflumm Road improvement district, the City of Olathe mistakenly relied on our special assessment law as statutory authority to assess plaintiffs' property. Accordingly, as the City's improvement plan is *ultra vires*, the resulting assessments are illegal and should be set aside."

In this case and in *Davis*, the district court reached several identical conclusions of law with regard to how the legislature intended the General Improvement and Assessment Law to be applied:

"8. K.S.A. 12-6a01 *et seq.* was intended by the legislature to be applicable only in instances where the improvement involved bestows a special or particular benefit on property in a limited area, *i.e.* for projects of less than city-wide scope.

"9. The justification for *special assessments* under improvement district financing is that the landowner is charged only for the *special benefits* conferred

on the property by the improvement; consequently, the landowner suffers no pecuniary loss."

In the present case, as in *Davis*, the primary issue is whether a city is precluded by K.S.A. 12-689 from financing the improvements to a main trafficway by special assessments pursuant to K.S.A. 12-6a01 *et seq.* Many of the arguments put forth by the parties to this case parallel those in *Davis*.

Like the City of Leawood in the *Davis* case, Olathe complains that the district court's concluding that the property owners had not received special benefit from the improvements usurped Olathe's legislative authority to decide which property benefits and to what extent. Olathe contends that the usurpation is all the more egregious in this case, where the Bauers had never claimed that they received no special benefit. Instead, the Bauers' complaints centered on the differential treatment of landowners who dedicated right-of-way and landowners who did not. The Bauers also complained of the differential treatment of the landowner who escrowed money and landowners who did not.

The Bauers and Olathe add their views and authorities to those discussed in *Davis* for and against the district court's conclusion that an improvement which is for the primary benefit of the city as a whole does not confer special benefit on property within a definable area within the meaning of K.S.A. 12-6a02. The Bauers weigh in on the side of the district court with the argument that K.S.A. 12-685 *et seq.* (the Main Trafficway Act) and 12-6a01 *et seq.* are mutually exclusive. The Main Trafficway Act applies when the primary benefit is conferred on the city as a whole, and the General Improvement and Assessment Law applies when the primary benefit is conferred on identifiable properties, their theory goes. They cite *Bell v. City of Topeka*, 220 Kan. 405, 553 P.2d 331 (1976), which we discussed in *Davis*. *Bell*, more than any other Kansas opinion, supports the view that special assessments are not suitable for improvements which primarily benefit the city as a whole. In *Bell*, improvements to Burlingame Road in Topeka were at issue. There, the court stated: "Where intersections, such as those in question, are designed primarily to control the pattern and flow of through traffic into and across the intersections of

major thoroughfares, the benefit, if any, to adjacent property is obviously negligible in comparison to the city at large." 220 Kan. at 419. As a result, the court enjoined assessment of any costs of the intersections against the benefit district. 220 Kan. at 420. It may be presumed, therefore, that city-at-large financing was to be used for the intersections. Thus, the improvements to Burlingame Road would have been financed by a combination of special assessments and city-at-large financing. The City of Topeka was proceeding under K.S.A. 13-10,115, which expressly provides for financing improvements with a combination of city-at-large funds and special assessments: "If only a percentage (which shall not be less than 50%) of the cost is paid by the city, the remaining cost shall be assessed against the adjacent real property."

Olathe calls to the court's attention *Garvey Elevators, Inc. v. City of Wichita*, 238 Kan. 682, 714 P.2d 956 (1986). Olathe cites the case for the proposition that the Main Trafficway Act may be used in conjunction with the General Improvement and Assessment Law for financing improvements which benefit both the adjacent properties and the city as a whole. *Garvey Elevators* does not involve the Main Trafficway Act, but it certainly supports the principle that special assessment financing pursuant to 12-6a01 *et seq.* may be combined with city financing for a project which is primarily for the benefit of the city as a whole. In *Garvey Elevators*, the City of Wichita passed an ordinance creating a benefit district pursuant to K.S.A. 12-6a01 *et seq.* for construction of a center drain to cure drainage problems in the North Wichita Industrial Park. Owners of land in the benefit district argued that it was not proper to finance a part of the cost of the center drain project through special assessments because assessment financing was inconsistent with the city's representation in applications for federal construction grants that the project was primarily for the benefit of the city at large and with "engineering reports to the effect that benefit to the property in the benefit district would not support charging the entire cost of the project to the benefit district." 238 Kan. at 686. The court was unconvinced by this argument:

"This argument appears to ignore the facts herein. The benefit district is assessed only approximately one-third of the cost of the center drain project—

with the balance paid through federal funds. The City applied for and received these funds based on benefits to the city at large. These facts are wholly consistent with the representation the project was primarily for the benefit of the city at large. The engineering studies indicate property in the benefit district would be benefited—but not to the extent of taxing the entire cost of the project to the property therein. It should be noted this issue does not involve the benefit-to-burden ratio on any particular property within the benefit district—rather, whether it was proper to create a benefit district to pay part of the project cost." 238 Kan. at 686-87.

This reasoning in *Garvey Elevators* coincides with that of the federal court and the courts of the states of Pennsylvania, New Jersey, and Illinois in cases cited by the City of Leawood and discussed in *Davis*.

Olathe finds additional support for combining city and special assessment financing in various provisions of the General Improvement and Assessment Law. K.S.A. 12-6a01(f) defines "improvement district" as "an area deemed by the governing body to be benefited by an improvement and subject to special assessment for all *or a portion of the cost* of the improvement." (Emphasis added.) K.S.A. 12-6a02 authorizes the governing body of any city to make

"improvements which confer a special benefit upon property within a definable area of the city and may levy and collect special assessments upon property in the area deemed by the governing body to be benefited by such improvement for special benefits conferred upon such property by any such municipal work or improvement and to provide for the payment of all *or any part of the cost of the work or improvement out of the proceeds of such special assessments* as hereinafter provided." (Emphasis added.)

K.S.A. 12-6a04(1)(f) and (2)(e) provide for an apportionment of costs between the improvement district and the city at large whether the improvement is initiated by the city or by petition. Subsection (1) sets out the notice and hearing requirements for city-initiated projects. It provides in pertinent part as follows:

"Before any contract is let or any work is ordered or authorized for an improvement, the governing body shall by resolution direct and order a public hearing on the advisability of the improvement. . . . Notice shall be given as to:

. . . .

(f) proposed apportionment of cost (if any) between the improvement district and the city at large."

Subsection (2) provides for improvements initiated by petition to be made without notice and hearing if the petition contains, among other things, "(e) the proposed apportionment of cost, if any, between the improvement district and the city at large."

K.S.A. 12-6a07 provides:

"(a) The city may pay such portion of the cost of the improvement as the governing body may determine, but not more than ninety-five percent (95%) of the total cost thereof. The share of the cost to be paid by the city at large shall be paid in the manner provided by K.S.A. 12-6a14.

"(b) If any property deemed benefited shall by reason of any provision of law be exempt from payment of special assessments therefor, such assessment shall, nevertheless, be computed and shall be paid by the city at large."

K.S.A. 12-6a15 provides for the issuance of bonds for a city's portion of financing. It states in pertinent part:

"The governing body of any city proposing to issue general obligation bonds of the city for payment of any portion of the costs of any improvement authorized by this act may by resolution submit the question of issuing such bonds at a general or special election called for that purpose . . . ."

In addition, Olathe notes that K.S.A. 13-10,115, which provides for the issuance of bonds to improve major traffic streets in cities located in certain counties, states in pertinent part: "If only a percentage (which shall not be less than 50%) of the cost is paid by the city, the remaining cost shall be assessed against the adjacent real property." This is the statutory provision which was before the court in *Bell.*

We conclude that our decision in *Davis,* that designation of a street as a main trafficway pursuant to K.S.A. 12-685 does not preclude financing improvements under the General Improvement and Assessment Law, is controlling here.

We next turn to the issue which was raised by the Bauers in the district court. There, they argued that including the costs of right-of-way acquisition in their assessment and not in the assessments against property owned by landowners who dedicated right-of-way was arbitrary and unreasonable and violated the due process and equal protection guarantees of the federal and state Constitutions. The district court, however, did not reach this issue. Nonetheless, Olathe urges this court to resolve the issue as

a matter of law based on the findings of fact made by the district court. The Bauers join in advocating that this court should decide whether including the right-of-way costs was proper. They suggest that the district court's decision invalidating the assessments could be upheld as the right result for the wrong reason.

In *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 863 P.2d 355 (1992), the material facts were stipulated to and all of the parties moved for summary judgment. In such a case, we noted that our review was de novo because we had the same opportunity to weigh the evidence as the district court. On appeal, the appellants argued that Missouri law applied. We responded:

"The Board of Control argues the law of Missouri should be used to resolve this dispute, listing all the parties located in Missouri and all the activities that occurred in Missouri. It states Kansas follows the rules of *lex loci contractus* and *lex loci delicti*.

"Since this issue was not raised in the district court, it is of questionable validity before us. See *Enlow v. Sears, Roebuck & Co.*, 249 Kan. 732, 738, 822 P.2d 617 (1991). However, because we are reviewing this case de novo we will consider the issue. The cause of action is for quiet title to real estate in Kansas. The law of the situs of the real estate is applicable." 250 Kan. at 762.

Here, although this issue was not decided by the district court, it was briefed and argued. The facts were not stipulated to, but the parties agree that the material facts are not in dispute. We therefore will consider the issue on appeal.

At issue is $15,868.16 of the Bauers' total assessment of $55,543.39. The $15,868.16 represents a portion of the right-of-way acquisition costs. No portion of the right-of-way acquisition costs were assessed against property of landowners who dedicated right-of-way for the improvement. The Bauers received monetary compensation for that portion of their property which was condemned for right-of-way. In its brief, Olathe states that their condemnation award was $20,900.00.

Olathe cites as authority for its assessment scheme K.S.A. 12-692(a), which provides:

"All lots or tracts of land abutting upon any existing or proposed street or highway, the owner or owners or predecessors in title to which, have dedicated or conveyed property necessary for the opening, widening or extending of such

street or highway, may, at the discretion of the governing body of the city, be exempt, in whole or in part from the payment of special assessment to pay the cost of acquiring land necessary for such opening, widening or extension from owners of lots or tracts of land abutting upon such existing or proposed street or highway and failing or refusing to dedicate or convey such property."

The Bauers contend that K.S.A. 12-692 cannot be used in conjunction with an assessment plan adopted pursuant to K.S.A. 12-6a01 *et seq.* They contend that 12-6a02 expressly prohibits it and that Kansas case law interpreting 12-6a02 and involving the use of alternative provisions of various public improvement statutes confirms the prohibition. The portion of K.S.A. 12-6a02 on which the Bauers rely is the introductory phrase of the following sentence: *"As a complete alternative to all other methods provided by law,* the governing body of any city is hereby authorized to make, or cause to be made, municipal works or improvements which confer a special benefit upon property within a definable area of the city." (Emphasis added.)

The cases cited by the Bauers include *Bell,* 220 Kan. 405; *Dodson v. City of Ulysses,* 219 Kan. 418, 549 P.2d 430 (1976); *Davies v. City of Lawrence,* 218 Kan. 551, 545 P.2d 1115 (1976); *Board of Education v. City of Topeka,* 214 Kan. 811, 522 P.2d 982 (1974); *Snyder Realty Co. v. City of Overland Park,* 208 Kan. 273, 492 P.2d 187 (1971); and *Giddings v. City of Pittsburg,* 197 Kan. 777, 421 P.2d 181 (1966). It is not contended that *Board of Education, Snyder Realty,* and *Giddings* contribute more than a simple reiteration of the opening phrase of 12-6a02. In *Giddings,* for example, the court's statement was in response to the argument that the benefit district configuration did not meet the K.S.A. 12-602 requirement for using the "center-of-the-block" assessment method. 197 Kan. at 780-81. Because 12-6a01 *et seq.* provides a complete alternative, including standards for the composition of the district, it was not necessary for the city to abide by the strictures of K.S.A. 12-601 *et seq.,* the general paving law. It does not stand for the proposition that the general paving law "center-of-the-block" assessment method could not have been used in conjunction with initiation of the improvement project by petition, as provided in the General Improvement and Assessment

Law. Thus, it cannot be said to support the proposition that 12-692 may not be used in conjunction with 12-6a01 *et seq.* Neither *Board of Education* nor *Snyder Realty* advances the Bauers' argument. The central issue in each is whether the properties included in the benefit district were similarly benefited, as required by K.S.A. 12-6a08(a).

The Bauers' argument is that the various acts under which municipalities may proceed with improvements are discrete, and they rely in particular on *Bell* and *Dodson* for the rule that the act under which the project is initiated governs all its stages. In *Bell*, the improvement of Burlingame Road was undertaken under K.S.A. 13-10,115 (Weeks), which provided for improvements to major traffic streets in cities located in counties of more than 120,000 people. In pertinent part, it stated: "If only a percentage . . . is paid by the city, the remaining cost shall be assessed against the adjacent real property . . . to the middle of the block on either side." Because Burlingame Road meanders, the city devised fictional blocks on which to compose the benefit district. The court concluded that Topeka could not elect to proceed under 13-10,115 and then disregard its assessment method requirement. Concerning *Dodson*, the court stated the following in *Bell*:

"*Dodson v. City of Ulysses*, 219 Kan. 418, 549 P.2d 430, involved a paving project which was undertaken pursuant to the 'old' general paving law, K.S.A. 12-601, *et seq.* However, the City of Ulysses attempted to employ a front foot method of assessment. This method is an authorized alternative under the 'new' general improvement and assessment law, K.S.A. 12-6a01, *et seq.*, but not under the 'old' law which provided only for assessments according to value. Concerning this departure from statutory provisions, we said in the *Dodson* opinion:

'. . . When it initiated this project the city had a choice of statutes to follow. Once it elected to employ the "old" statute it was bound to follow it. . . .' (p. 425.)

So, in the instant case, the city, once having elected to proceed under 13-10,115, is bound to follow the provisions thereof. It follows that affected property owners are entitled to have their property assessed according to the statutory method, and a substantial departure from the method prescribed by the legislature will invalidate the assessment." 220 Kan. at 410-11.

The next step in the court's analysis was the inquiry whether the language of 13-10,115 mandated center-of-the-block assessments, and the court concluded that it did. Thus, in both *Dodson* and

*Bell*, the act under which the city had elected to proceed specified what assessment method or methods could be used. When the cities used distinct assessment methods authorized in other acts, therefore, they contravened express provisions of the act they purported to follow.

The present case is distinguishable from *Dodson* and *Bell* in that Olathe's use of 12-692 does not contravene any provision of 12-6a01 *et seq.* The General Improvement and Assessment Law does not specify how the costs of right-of-way acquisition are to be allocated. K.S.A. 12-6a08 provides:

"(a) The portion of the cost of any improvement to be assessed against the property in the improvement district as determined in K.S.A. 12-6a04, and amendments thereto, shall be apportioned against the property in accordance with the special benefits accruing thereto by reasons of such improvement. The cost may be assessed equally per front foot or per square foot against all lots and pieces of land within such improvement district or assessed against such property according to the value of the lots and pieces of land therein. The value of such property shall be determined by the governing body of the city with or without regard to the buildings and improvements thereon or the cost may be determined and fixed on the basis of any other reasonable assessment plan which will result in imposing substantially equal burdens or shares of the cost upon property similarly benefited. The governing body may from time to time determine and establish by ordinance reasonable general classifications and formulae for the apportionment of the cost between the city and the area to be assessed, and the methods of assessing the special benefits, for various classes of improvements.

"(b) This section shall not be construed to limit the adoption of any assessment plan for any improvement that recognizes varying benefit levels and imposes assessments in relation thereto."

The present case is factually distinguishable from *Dodson* and *Bell* in that assessment methods in those cases were transplanted from one statutory scheme for the making and financing of improvements into another. In the present case, the exemption provided by K.S.A. 12-692(a) was used by Olathe in conjunction with the General Improvement and Assessment Law. K.S.A. 12-692 is not a part of any one scheme by which municipalities make and finance improvements. It was enacted in 1970 as a free-standing statute which authorized municipalities to exempt certain property from special assessment to pay costs of acquiring land nec-

essary for widening streets and highways. See L. 1970, ch. 70. Since then it has been amended to add discretion for municipalities to do the same for storm sewers and drains. See K.S.A. 12-692(b).

The Bauers contend that *Davies*, 218 Kan. 551, directly supports their contentions and its facts "are remarkably similar to the facts involved in this case." The facts of *Davies* which they have in mind are that the assessment plan was adopted pursuant to 12-6a01 *et seq.* and that the city exempted property where sidewalks already had been built at the landowner's expense. This court invalidated the assessment plan and stated: "There is nothing in the Act here under consideration which authorizes the exemption of these properties from a benefit district." 218 Kan. at 560. This statement does not, contrary to what the Bauers advocate, necessarily mean that an exemption authorized outside the General Improvement and Assessment Law may not be applied to an assessment plan formulated in accordance with 12-6a01 *et seq.* The composition of the benefit district in *Davies* was fraught with problems because the city exercised its creativity with little or no regard for legislative authorization. The city did not claim to have any statutory authority for exempting property with previously installed sidewalks. Nor did the city claim to have any statutory authority for planning sidewalks only on one side of only selected streets within the benefit district while assessing equally on a front-foot basis throughout. 218 Kan. at 559. This court concluded that the city's plan is "such a radical departure" from what statutes and case law authorize as to constitute arbitrary action by the city. 218 Kan. at 562. If the city had been able to point to some free-standing statute which gave it discretion to exempt property with previously installed sidewalks, the court's consideration of at least that aspect of the assessment plan may have taken a different turn.

Olathe also relies on *Davies*, and it brings a passage to the court's attention in which the court quoted from 12-6a08 to the effect that costs may be fixed according to any reasonable plan which places substantially equal burdens on properties similarly benefited. 218 Kan. at 559. It is Olathe's position that the non-

dedicating landowners received the benefit of lowered right-of-way acquisition costs from the action of the dedicating landowners but did not shoulder the burden of loss of property without compensation. Thus, by burdening the nondedicating landowners with assessments for the costs of right-of-way acquisition, Olathe balanced the otherwise unbalanced benefit-to-burden ratios of the dedicating and nondedicating landowners. The statutory authority for the exemption of dedicating landowners was found in 12-692(a), and the balanced benefit-to-burden ratios satisfy the requirement of 12-6a08 that assessments impose substantially equal burdens or shares of the costs on similarly benefited properties.

For their contention that Olathe's assessment plan is arbitrary and unreasonable, the Bauers rely heavily on *Bowers v. Gardner*, 187 Kan. 720, 360 P.2d 17 (1961), and *Engstrom v. City of Wichita*, 121 Kan. 122, 245 Pac. 1033 (1926). They contend that the cases are directly on point and teach that an assessment scheme which singles out nondedicating landowners to pay acquisition costs is arbitrary and unreasonable.

The facts of *Engstrom* are unusual:

"The city appropriated a strip of land off the west side of plaintiff's land for the purpose of widening Fountain avenue and awarded plaintiff $2,000 as damages for the land taken. It assessed $1,500 against the remainder of plaintiff's land as benefits; and to raise the money to pay the excess damages over benefits it erected a special benefit district consisting only of plaintiff's remaining land." 121 Kan. 122.

The court took a dim view of the city's action:

"It is not remarkable that the trial court should conclude that it was unreasonable—in effect an arbitrary abuse of discretion—to take a considerable part of plaintiff's land for public use and then subject the remaining portion of it to the payment of *all* the damages for the land thus taken. If nobody thereabout other than plaintiff was to be benefited by the widening of the street, the widening of Fountain avenue was a mere capricious meddling with plaintiff's property. If the widening of the street was of benefit to other nearby property, and it seems logically impossible that it could have been otherwise, then it was arbitrary and unreasonable to create a benefit district solely of plaintiff's property and to relieve from the burden by exclusion from the district the other nearby property which was similarly benefited. (*Norwood v. Baker*, 172 U.S. 269, and Rose's notes thereto in 43 L. Ed. 443, *et seq.*)" 121 Kan. at 123.

It appears that the city attempted to defend its action by asserting that right-of-way had been dedicated by a property owner across from Engstrom. The defense was ineffective:

"Nor is it a sufficient defense for the seemingly unreasonable action of the city to argue that the benefited property across the street should bear no portion of the burden, for the reason that the narrow street already existing had been dedicated from the property on the west. There was neither evidence nor stipulation covering that point; and on the scant record submitted to us this argued fact does not appear; nor would it, if true, justify the erection of a district comprised of no other property than plaintiff's to bear the burden of this public improvement." 121 Kan. at 123-24.

In *Bowers*, 187 Kan. 720, the city acquired right-of-way by condemnation and dedication on both sides of a street which was to be widened. To pay costs of acquisition, the city created a benefit district comprised of the properties of nondedicating landowners. Costs of improvements to the street were paid by other means. This court affirmed the district court's enjoining the city's proceeding with the assessments. The court reasoned:

"The trial court was well within the evidence presented by the record herein, when it found all abutting properties on both sides of Seneca Street, between Pawnee and Esthner Avenues, were in fact benefited by widening the street. It seems logically impossible that it could be otherwise. We therefore hold, on the authority of the *Engstrom* case, it was arbitrary and unreasonable to create a benefit district comprised of properties on Seneca Street representing roughly only 50% of the lineal footage and to relieve from the burden other properties which were similarly benefited by excluding them from the district." 187 Kan. at 727.

K.S.A. 12-692 was not enacted until after the decision in *Bowers* was made. Nevertheless, the Bauers argue *Bowers* is "extremely persuasive" because "it was decided after the enactment of K.S.A. 12-6a01 *et seq.* and therefore defines what is not a 'reasonable' assessment plan under K.S.A. 12-6a08." It appears, however, that the benefit district which included the Bowerses' property was created under G.S. 1949, 26-201 *et seq.* 187 Kan. at 721, 725-27. The Bauers do not show that the acts are similar, and they would not appear to be, as G.S. 1949, 26-201 governed condemnation of private property. See 187 Kan. at 726.

The Bauers attempt to bring *Engstrom* and *Bowers* closer to the present by stating that "*Engstrom* has been cited with ap-

proval by this Court as recently as 1986 in *Garvey Elevators.*" *Engstrom* appears in *Garvey Elevators, Inc. v. City of Wichita*, 238 Kan. 682, 688, 714 P.2d 956 (1986), as a citation within a quote to the effect that a city's governing body is to be enjoined only in instances of clear abuse of discretion. Its holding was not mentioned.

*Engstrom* and *Bowers* is distinguishable from the present case on both the facts and the law. As a matter of fact, the earlier cases involved benefit districts which were made responsible only for costs of acquiring condemned property. For the Pflumm Road improvements, adjacent properties have been assessed for costs of street improvements as well as for right-of-way acquisition costs. As a result, all properties adjacent to the improved portion of Pflumm Road, that is, all properties which benefited from the improvement, are included in the improvement district and are assessed. In contrast, the benefit districts in *Engstrom* and *Bowers* included only nondedicating landowners. The composition of the districts was found to be unreasonable because all adjacent properties benefited similarly from the street improvements, but some were included and some were excluded.

In *Bowers*, Wichita justified its action as a way of balancing the burdens of dedicating landowners. The court stated: "On the surface there appears to be logic for the [city's] position." 187 Kan. at 724. The court, however, found that *Engstrom* was controlling. The court also looked to the provisions of G.S. 1949, 26-201 *et seq.*, which applied to properties benefited by the improvement. 187 Kan. at 725-27. Thus, the analysis centered on the benefit conferred by the improvement project. In the present case, Olathe's position is somewhat analogous to Wichita's in that it takes burdens into account. Unlike Wichita, however, Olathe includes benefits as well as burdens in its equation.

As a matter of law, the statutes governing the cities' actions are a basis on which the present case may be distinguished from *Engstrom* and *Bowers*. K.S.A. 12-692(a) authorizes exemption of dedicating landowners from the burden of paying special assessments for the cost of acquiring right-of-way. Benefits conferred by the improvement project are not a subject of the statute. Ar-

guably, one of the effects of the 1970 enactment of 12-692 was to sanction consideration of the benefit-to-burden ratio in creation of districts and formulation of assessments.

Olathe cites *White v. County of San Diego*, 26 Cal. 3d 897, 163 Cal. Rptr. 640, 608 P.2d 728 (1980), as upholding a similar assessment law. In that case, the plaintiffs' principal objection to assessments for widening a street was exempting dedicating landowners from assessment for right-of-way cost. 26 Cal. 3d at 902. A California statute provided: " 'In assessing land, credit may be given for dedications and for improvements constructed at private expense.' " 26 Cal. 3d at 907. The Supreme Court of California concluded that it was proper for the county to eliminate the right-of-way assessment against parcels from which right-of-way had been dedicated. 26 Cal. 3d at 907. The Bauers quote from the dissenting opinion in *White,* which, in turn, relies on a decision substantially antedating enactment of statutory authority for crediting dedication. See 26 Cal. 3d at 910. The Bauers correctly point out that *White* is not "controlling precedent in this state," nor does it involve Kansas law. However, it is persuasive authority on this issue.

The Bauers also contend that the assessment against their property is a taking without just compensation in violation of the Fifth Amendment guarantee of due process. Their theory is that the amount of the special assessment too far exceeds the amount of special benefit conferred on the property by the improvement. They rely on *Norwood v. Baker*, 172 U.S. 269, 43 L. Ed. 443, 19 S. Ct. 187 (1898), and *Mullins v. City of El Dorado*, 200 Kan. 336, 436 P.2d 837 (1968). They quote the following from *Norwood* and assert that this court in *Mullins* embraced the same concept:

"[T]he principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. . . .

"[T]he exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess*, a taking, under the guise of taxation, of private property for public use without compensation." 172 U.S. at 278-79.

The same quote appears in *Mullins* with the addition of the following sentence:

" 'We say "substantial excess," because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment.' " 200 Kan. at 341-42 (quoting *Norwood v. Baker*, 172 U.S. at 279).

The Bauers argue that their property is assessed substantially more, due to their requiring compensation for right-of-way, even though no special benefit is conferred on their property which is not shared by the property of dedicating landowners. Their claim is based upon the special assessment against their property of $15,689.16 for right-of-way, while no special assessment was made against the property of dedicating landowners.

As we have seen, Olathe argues that burdening the nondedicating landowners with the special assessment for right-of-way acquisition corrects the advantage gained when right-of-way acquisition costs were lowered by other landowners' dedications. Olathe also argues that the Bauers are not in a position to be claiming that the assessment on their property substantially exceeded the benefit because they failed to offer any evidence of the claimed disparity. The Bauers respond that constitutional infirmity of the assessment plan is demonstrated by their property's having been assessed more than $15,000 more than property similarly benefited by the Pflumm Road improvements. However, the Bauers' argument fails to take into consideration that they received compensation for the right-of-way easement through condemnation. The property owners who dedicated their right-of-way received no compensation for the easement. The burden to these property owners is clearly greater. The assessment for the right-of-way easement against nondedicated property was done to equalize the burden upon all the properties similarly benefited. In so doing, the cost to the properties is equalized and, in fact, is not "in substantial excess of the special benefit" to the properties.

The Bauers further contend that the due process requirement is violated when there is a possibility of assessment exceeding

benefit as well as when the landowners have shown that the special assessment substantially exceeds the benefit. In *Allison v. Board of Johnson County Comm'rs*, 241 Kan. 266, 737 P.2d 6 (1987), the plaintiffs alleged violations of due process in imposition of assessments in excess of benefits conferred. We said:

"The exaction from the owner of private property of the cost of public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation of private property for public use without compensation. *Norwood v. Baker*, 172 U.S. 269, 279, 43 L. Ed. 443, 19 S. Ct. 187 (1898). Where a special assessment exceeds the amount of special benefits to the property assessed, the assessment is, as to such excess, a taking of private property for public use without just compensation." 241 Kan. at 275.

The Bauers are challenging the special assessment against their property, and to constitute a due process violation, the excess would need to be established rather than hypothetical.

The Bauers also argue that the special assessment violates equal protection. They concede that the equal protection guarantee does not preclude classifying persons for purposes of legislation, as long as the reclassification bears a rational relationship to a legitimate governmental purpose. The parties agree that the standard to be applied here in determining whether or not Olathe's assessment plan violates the federal and state guarantees of equal protection is whether the differential treatment of dedicating and nondedicating landowners bears a rational relationship to a legitimate governmental purpose. Olathe contends that the governmental purpose is to encourage the dedication of property for public improvement and that it is a legitimate purpose. The Bauers disagree and state that the governmental purpose "is to discourage owners within the improvement district from exercising their constitutional right to insist on payment for the land taken by the City in widening Pflumm Road," and that it is not a legitimate purpose. We fail to see the merit in this statement. The Bauers insisted on and received payment for the right-of-way easement. Olathe's purpose is to insist that costs of the right-of-way be shared equally by similarly situated property.

In *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 779, 830 P.2d 41 (1992), the court considered how the governmental purpose should be defined:

"Where the rational basis test is the measure of equal protection, 'statutory discrimination will not be set aside *if any state of facts reasonably may be conceived to justify it.*' (Emphasis added.) *McGowan v. Maryland*, 366 U.S. at 426. In this regard, Justice Lockett stated in his concurring opinion in *Farley [v. Engelken*, 241 Kan. 663]: 'Where the legislature has enacted statutory provisions that do not unequivocally state the public policy, the courts may interpret the intention of the legislature.' 241 Kan. at 679. No authority has come to this court's attention which prohibits the court from inferring and supplying a purpose for legislation where it is not expressed, at least for the two least stringent levels of equal protection scrutiny."

Using the purpose suggested by Olathe, the differential treatment of dedicating and nondedicating landowners bears a rational relationship to the purpose.

Finally, in the district court, Olathe sought summary judgment on its claim that the procedures it used in establishing the improvement district and levying the assessment were proper and in compliance with the law. In its proposed statement of uncontroverted facts for the motion for summary judgment, Olathe included a lengthy recitation of facts which trace each step taken by Olathe in the course of establishing the improvement district and levying assessments. Those facts relate solely to Olathe's compliance with statutory procedures. The record on appeal does not include the parties' responses to proposed statements of uncontroverted facts. During argument on the cross-motions, both counsel assured the district court that no material facts were controverted. Olathe's counsel stated: "I don't think there is any contention that in fact we followed the procedures. The notice was given, everything of that nature was done. And really the only thing that plaintiffs have attacked in their response to our motion is the exemption requirement on right-of-way." In his subsequent remarks, counsel for the Bauers did not contradict, correct, or question this representation. The district court judge wrapped up the argument by saying: "I take it from your comments that neither side feels there [are] any material facts that would preclude this case being decided on summary judgment solely." Neither counsel responded. In the memorandum decision, the district court judge reiterated: "Counsel advise that all material facts are stipulated and only questions of law remain in the disposition of this controversy." On appeal, the Bauers did not brief this issue.

In these circumstances, the issue should be resolved in Olathe's favor. On the motion for summary judgment, the Bauers had an affirmative duty to come forward with evidence to establish a dispute as to a material fact. See *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, Syl. ¶ 1, 863 P.2d 355 (1992). They neither questioned Olathe's proposed facts nor offered any of their own relating to compliance with the statutory procedures. The Bauers have had a number of opportunities in addition to their response to Olathe's proposed facts to come forward with evidence tending to show noncompliance with the statutory procedures for establishing improvement districts and levying assessments. They have failed to do so. In addition, the Bauers challenged the assessment after the project was completed and the assessment levied. They did not challenge the creation of the improvement district and the use of special assessments under K.S.A. 12-6a01 *et seq.* for the financing of improvements to Pflumm Road. In these circumstances, the district court should have granted judgment in favor of Olathe on this issue.

The judgment of the district court is reversed, and the case is remanded with directions to enter judgment for the appellant, City of Olathe.

HOLMES, C.J., and ABBOTT, J., not participating.

DAVID PRAGER, C.J. Retired, and ROBERT H. MILLER, C.J. Retired, assigned.